No. 16,633.

MOORE *v.* THE PEOPLE.
(235 P. [2d] 798) ·

Decided August 27, 1951.   Rehearing denied September 17, 1951.

198

Mr. Joseph D. Neff, Mr. A. E. Small, Jr., for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Norman H. Comstock, Assistant, for the people.

Mr. Justice Holland delivered the opinion of the court.

We will hereinafter refer to plaintiff in error as defendant.

September 9, 1950, upon the complaint of Albert Cosgrove, doing business as Cosgrove Hotel at Rangely, Rio Blanco county, Colorado, a complaint was filed in justice of the peace court charging defendant with unlawfully making and delivering a certain check upon the Uintah State Bank of Vernal, Utah to the complaining witness with intent to defraud, when defendant did not have sufficient funds or credit for the payment of same. The check was in the sum of $57.67, and dated July 13, 1950. After being twice presented for payment, the check was returned to the complaining witness, the depositor, without payment and stamped "insufficient funds."

As admitted by counsel for defendant, the record before us is incomplete or inaccurate, or both. Based on an

incomplete record, we assume, and it would appear, that defendant was convicted of the charge in the justice court and it is made certain by the record that defendant appealed the case to the county court where he waived a jury and trial was had to the court, resulting in a finding of guilt and a sentence of fifty dollars fine and ninety days imprisonment in jail was imposed thereon. Defendant assigns error and requests determination on his application for supersedeas.

Trial was had on December 6, 1950, and at the conclusion thereof, was continued, either for defendant's convenience, or to enable defendant to find and introduce documentary evidence or the whole matter taken under advisement (all of which is not clear from the record) to December 11, 1950.

At the time, and prior thereto, defendant was a practicing attorney with offices at Rangely, Colorado. Albert Cosgrove, the complaining witness, testified that sometime in December, two years prior to the date of trial, he had some delinquent accounts at the hotel which he was operating representing money due for food and lodging; these accounts amounted to between two hundred sixty and three hundred dollars; that he turned them over to defendant for collection, and that after about a year, defendant made a statement of the amount collected by him on the delinquent accounts showing one hundred twenty or one hundred thirty dollars collected; defendant deducted for his services and all that was due him, leaving a balance of fifty-seven and 67/100 dollars for which he gave the complaining witness the check here involved; that the check was on the Uintah State Bank of Vernal, Utah; that complaining witness sent the check by mail to said bank where he carried his account; that the deposit had to go by mail to Meeker, then to Craig, Colorado, and then back to Vernal, Utah; that the check came back about a week later and he took it to defendant, who instructed him to return it again; when he followed the same procedure by mail the second time and

again received the check back; then, in an attempt to see defendant, he found a note on the latter's door stating that he would not be back until around the middle of August; that he later found that defendant had left the city and *almost left the state;* that the check has never been paid; that he then proceeded to use the law to find out if the *people could pay their bills* just as defendant did; he identified the bank film or photostatic copy of the check as being a copy of the check involved. He further testified that there was a slip attached to it when it was returned to him from the bank, but that he did not know where the slip was, and that the last he saw of it was on defendant's desk. He stated in response to a question by the court that the slip stated that the check was being returned due to insufficient funds.

On cross-examination he stated that he received the check in settlement of an account that had been running for some period of time, and as representing what was due him on accounts that defendant had collected for him after expenses were deducted.

Defendant asked that he be sworn and allowed to testify as a witness for himself. Unbelievable as it may seem, this request was objected to by the deputy district attorney, and thereupon defendant stated that he would not testify. Without defendant's testimony we must assemble the facts as they seem to appear from the testimony of the different witnesses and exhibits, some of which may or may not properly be in the record; however, they are before us and the details of which will later be discussed.

From this unsatisfactory state of the record, the facts, not disputed, seem to be as follows:

As heretofore stated, the check in question was dated and delivered to the complaining witness on July 13, 1950 at Rangely, Colorado. On July 8, defendant mailed from Lakewood, Colorado, a check for $625.00 drawn by the M. & S. Motor Company of Flagler, Colorado to the Uintah State Bank at Vernal, Utah, with instructions

to deposit same to his account and issue cashier's check in the sum of $320.00 and mail the same in an enclosed air-mail envelope to M. & S. Motor Company, Flagler, Colorado. According to the copy of the bank's statement as to defendant's account from June 5, 1950 to October 26, 1950, in evidence, a $625 item of deposit is listed as of July 11, 1950 and the statement further shows that on July 20, 1950, the account shows a balance of $627.68 on which an item of $625 was charged back against the account. On July 20, the bank, after charging back the item of $625 mailed its slip, together with the $625 check to defendant at Rangely, Colorado, also defendant's original letter of transmittal of the check to the bank, which letter is either in or not in the record here as we will later discuss. The slip attached to the check is in evidence and shows that defendant's account was charged with the item of this check in the amount of $625 with the notation "Payment stopped."

H. Walter Woolly, cashier of the Uintah State Bank, a people's witness, stated that the $625 check was received and that the practice of the bank was that the person making the deposit was always notified that the check was being held for collection. On cross-examination the witness further testified that the bank's records showed the receipt of the $625 check on July 11 and stated that the account showed a deposit of an additional $90 after July 11; he then identified the slip of notification which was attached to the check and returned to defendant and stated that July 20 was the date that it was mailed to defendant. He further stated that he personally, by mail, notified defendant that the check had been held for collection, but there is no special notation on the account to that effect. On redirect examination, the witness testified that when defendant sent the check to the bank, there was a letter of instruction with a request for a cashier's check and stated that the cashier's check was to be in the same amount as the deposit and to be made to Mabel L. Moore as he remembered the

transaction. On further cross-examination by defendant, the witness stated that the instructions he had received when defendant sent the check for deposit, were returned to defendant with the check and when questioned about whether or not defendant's letter requesting the cashier's check in the amount of $320 be sent to the people in Flagler in an enclosed air-mail letter addressed to them, the witness said, "I can remember the air-mail envelope, but I can't remember the other."

Following the closing of the people's case, defendant presented a motion, or renewed his motion, for a directed verdict. The court reserved the ruling on the motion, stating that the case would be argued in the usual manner. We now approach the astonishing circumstance of the trial. Defendant asked that he be sworn and allowed to testify as a witness for himself. The district attorney objected, due to the fact that there was no examining attorney and if he testified he must ask himself a question and then answer; defendant then replied, "I will not testify." This was at the conclusion of the trial on December 6, and what further occurred at that time leading to a continuance until December 11, had just as well have been written on the sands of time so far as any coherent idea can be determined from the record. We must gather from the statement of the assistant district attorney, and the statement of defendant, made at the opening of court on December 11, in the words of the district attorney, "toward the end of the trial on Wednesday such a request was made by the defendant saying that he be allowed to bring in other evidence at a later date. The people objected to that and if my recollection is correct the objections were sustained * * *."

Defendant stated, "Pursuant to my request at the conclusion of the hearing on the 6th that I be permitted to be able to produce the document, that I be permitted to enter this document before the judgment. I did not have this before because I did not have information, that it would be used. This bears on the state case, and bears

on the argument of the District Attorney. I wish to substantiate my statement by the marking and introduction of this letter. This is the letter mailed to the bank with instructions as to the handling of the $625.28 check. It was returned with the check upon which payment had been stopped." The district attorney stated: "The case is closed and the People's witnesses allowed to return home. If Mr. Moore wished to present any other evidence, he should have had it at the trial. I understand that this continuation was for Mr. Moore's convenience only and not to present any other evidence."

"Court: The objection is sustained.

"By Mr. Moore: I want this document placed in the records.

"Objection by Mr. Balcomb.

"By Mr. Moore: All exhibits are marked and made a part of the record. For the purpose of this record I am insisting that it be marked.

"By the Court: The document will have to be withheld.

"By Mr. Moore: The only way to have it entered is to have the reporter mark it as being tendered by me.

*   *   *

"By Mr. Moore: The defendant asked leave of court to reopen the defense as was requested at the conclusion of the hearing on the 6th, provided the letter which Mr. Woolly stated contain certain directions to him pertaining to the $625 check could be produced. A letter dated July 8 to the Uintah State Bank, which is the letter returned to me, the defendant, I offer this as part of the defendant's case in regard to the testimony by Mr. Woolly * * *.

"The Court: The instrument may be placed in a sealed envelope and marked what it is and sent to the Supreme Court for their decision as to whether it should be presented in the case."

The Attorney General, now appearing for the people, states: "This cause was tried by the court on December 6, 1950, and, after argument by counsel, the cause con-

tinued to December 11, 1950, at which time the court announced it would render its judgment." We find nothing in the record except a narrative statement by the clerk to substantiate any announcement of any kind by the court concerning the continuance. Counsel further stated: "Had it [the letter] been timely offered, together with testimony regarding the foundation for its introduction, it would have been material and important to defendant's case. No offer was made except that of the exhibit."

With this important letter before the trial court and the prosecutor, every sense of justice in a criminal prosecution required the court to consider the tendered exhibit and if not controlling in its decision, to at least allow the exhibit to be made a part of the record. It was as much the duty of the prosecutor to see that defendant had a fair trial and to not reject anything that was reasonably favorable to defendant, as it was to make objections to the court, which either did not understand the rudimentary principals of criminal justice and procedure or did not want to apply them. These matters appearing herein are of such serious nature that they cannot go unnoticed, and deserve condemnation along with criticism of defendant, a lawyer of many years standing, in not giving closer attention to the making of a record which ultimately might be vital to him — an apt illustration of the fact that ordinarily when a lawyer represents himself he has an over-anxious and careless client.

■ The motion for a directed verdict should have been sustained from all that can be gathered from the facts in the case, and not contradicted; however the judgment must be reversed and the defendant discharged on one of the grounds presented, namely, that the giving of a check in settlement of a past-due account does not constitute an offense under section 313, chapter 48, '35 C.S.A., and requires a discussion and ruling thereon for guidance in similar cases.

The section of the statute involved is as follows: "§313.

Any person who, with intent to defraud, shall make and deliver or draw and deliver or utter or give any check or draft upon any bank or banking association wherein such maker or drawer shall not have sufficient funds or credit for the payment of same, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not to exceed $500.00 or imprisoned in the county jail not to exceed six months, or shall suffer both such fine and imprisonment; and the fact that payment of such check when presented in the usual course of business, shall be refused by such bank or banking association for lack of sufficient funds to the credit of the drawer or maker with which to pay the same, shall be prima facie evidence of the fraudulent intent hereinabove mentioned."

This statute, literally construed, can produce harsh results, however, we are not to be understood as impliedly, or otherwise, holding the statute either good or bad, but prosecutions under the strict terms thereof should be closely scrutinized. Under the statute, the giving of a check that is turned down by the bank on which it is drawn because of insufficient funds, is a prima facie case of a misdemeanor. The action of the bank makes a prima facie case of intent to defraud. This places the burden of disproving intent on defendant. Contrary to the rule, even well known to laymen, that a defendant in a criminal case is presumed to be innocent until proven guilty, here the action of the bank, even though it be erroneous, places the burden on the defendant. The state or prosecutor is called upon to prove every essential element of the crime, and the intent may be proven by circumstances. Under this statute, the prosecution could rest as having made a prima facie case by the fact that payment of the check was refused by the bank, and thus criminal evidence of intent to defraud was established. It is for these reasons that it is hereinbefore suggested that prosecutions under the strict terms of the statute are to be closely scrutinized because too many errors occur daily in banking institutions concern-

ing the matter of credit, or arrangements for credit and improper charges against a depositor's account. The general rule that criminal intent will be presumed from commission of the unlawful act, does not apply under the statute, because the crime consists of the act combined with a specific intent, and proof of the commission of the act does not warrant any presumption that defendant had specific intent to defraud. Before the defendant here could be convicted, it must be shown that he intended to defraud, and did defraud, the complaining witness. The law will not presume an intention beyond what was accomplished by the act, and therein lies the danger of the concluding paragraph of the statute making the action of the bank prima facie evidence of intent. Here the act of a third party is evidence of criminal intent of defendant, nevertheless, this prohibited presumption creeps into the prima facie case under the provisions of the statute.

There is no intimation, or even slight suggestion, that the complaining witness in the present case was defrauded in any manner whatsoever, because he lost nothing and his financial condition did not change on the strength of the check.

The statute hereinbefore set out, and under which defendant was prosecuted, was enacted in 1915; appears as chapter 71 of the Session Laws of that year; and, according to the title, was "To punish the fraudulent giving of checks or drafts upon any bank or banking association and to repeal all laws in conflict herewith." It is evident that the legislature directed its repeal toward the law of 1885, page 169, section 1, later appearing as section 1850, chapter 35 of the 1908 revised statutes of Colorado, and is as follows: "If any person shall, with intent to cheat and defraud another, give any check or draft upon any bank, whether the same shall be organized under state laws or laws of the United States, in which such person shall not have sufficient funds, in payment of any debt in whatsoever manner contracted, he shall

be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than two hundred (200) dollars, nor more than one thousand (1,000) dollars, or imprisoned in the county jail not less than three months, nor more than one year, or both."

A comparison of the two statutes makes the conclusion absolute that the legislature, in enacting the later or 1915 act, specifically intended to exclude the phrase, "in payment of any debt in whatsoever manner contracted" from the present law; therefore, the defense here advanced and presented on motion for directed verdict, that the check here involved was given for the payment of a past or existing debt, would not have been good under the old statute, but in keeping with the present law was, and is, a complete defense and specially established by the People's evidence. In this case the questionable prima facie case was negatived by the prosecution's evidence which came from the mouth of the complaining witness. It is interesting to observe that the state of Missouri now has a statute similar to our old 1885 statute which includes "for the payment of any past-due debt or other obligation of whatsoever form or nature * * *," but formerly the Missouri statute was similar to our present statute and the case of *State v. Hack*, decided May 4, 1926 by the St. Louis Court of Appeals, reported in 284 S.W. at page 842, is squarely in point; contains a discussion of the two statutes; and in that case the prosecution was had under the old statute which did not include the question of a past-due debt or other obligation, and contains the following language:

"Whilst under section 3553, Revised Statutes of Missouri 1919, the giving of a check with intent to defraud is made a misdemeanor, and section 3554 provides that, 'as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank or

other depository, * * * ' yet, since it affirmatively appears in the state's case, and in fact is conceded by the state, that the check in question was given in payment of a past-due account, the prima facie case is overcome, and it must be ruled, as a matter of law, that plaintiff, having obtained nothing on the strength of this check, could not be held as for having issued the check with intent to defraud.

"It may be well to note that cases in which checks are now given for the payment of any past-due debt fall within the purview of our bad check statute, for the Legislature has amended section 3553 so that it now provides that: * * *."

It is not to be implied that because of a lack of full discussion of other errors assigned, that they are without merit.

■ The contention of defendant that the court erred, over his objections, in permitting winesses to testify for the people whose names were not endorsed on the information is without merit. That contention applies in cases of murder and other felonious crime under our statute. In all other cases the defendant must be furnished with a list of the witnesses and jurors and a copy of the indictment on request. There is no showing in the record before us of any such request by defendant.

■ From the face of the unsatisfactory record, it was error and abuse of discretion for the trial court to refuse to reopen the case — if it had been closed — to permit defendant to introduce documentary evidence according to an apparent request made at the conclusion of the first day of trial. This document was the letter of transmittal written by defendant on July 8 enclosing the $625 check to the bank for deposit with instructions to issue a cashier's check for $320 and with the enclosure of an addressed air-mail envelope for the bank's use in forwarding the cashier's check to a third disinterested party. This letter, under the direction of the trial court, was excluded as a part of the record, but ordered to be

enclosed in an envelope by the clerk and marked to be sent with the record to this court, and is now before us in that manner. Defendant's excuse for not having the letter at the time of the first hearing discloses careless preparation for trial; nevertheless, the letter admittedly received by the bank and returned to defendant after payment was stopped on the $625 check was most vital to the defense and should have been conclusive as against the testimony of the cashier of the bank who stated from his best recollection that the letter contained instructions to issue a cashier's check for $625, the full amount of the deposit, to Mabel Moore, who, it appears, is defendant's wife.

The length of this opinion is unnecessary for the purposes of a reversal on the law and facts of the case before us; however, we feel that guidance and control of future prosecutions under the statute involved is needed, and the view expressed herein may be helpful.

The judgment is reversed and the cause remanded with the direction that defendant be discharged.

MR. CHIEF JUSTICE JACKSON and MR. JUSTICE STONE concur in the result.

MR. JUSTICE CLARK not participating.