No. 25328

### The People of the State of Colorado v. Grace Vinnola
(494 P.2d 826)

Decided March 13, 1972. Opinion modified and as modified rehearing denied March 27, 1972.

Jarvis W. Seccombe, District Attorney, Coleman M. Connolly, Deputy, for plaintiff-appellant.

Wallace L. Vander Jagt, for defendant-appellee.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Vinnola was charged with violating C.R.S. 1963, 40-14-20, as amended by Colo. Sess. Laws 1970, ch. 48, commonly known as the bad check law. The trial court granted defendant's motion to dismiss the charge, ruling that the entire statute was unconstitutional. The court gave numerous reasons for its ruling. In accordance with C.R.S.

1963, 39-7-26, the district attorney for the Second Judicial District has prosecuted this appeal on behalf of the People of the State of Colorado to challenge the trial court's judgment declaring this statute unconstitutional.

We affirm the judgment of the trial court. C.R.S. 1963, 40-14-20, as amended by Colo. Sess. Laws 1970, ch. 48 is unconstitutional and cannot be enforced in its present form. There are a number of reasons for our declaration of unconstitutionality, and each is discussed herein.

I.

At this point, we deem it advisable to undertake a review of the history and content of previous bad check laws in Colorado and the current statute now under review. The first such law was passed in 1885 and was very straightforward in its language. It provided that any person, who, *with intent to cheat and defraud another,* gave a check upon any bank in which the person did not have sufficient funds, in payment of any debt in whatsoever manner contracted, was guilty of a misdemeanor. Colo. Sess. Laws 1885, p. 169, § 1. (Emphasis added.) This statute was carried forward in 1908 C.S.A., ch. 35, § 1850. In 1915, the legislature amended the statute to read:

"Any person who, *with intent to defraud,* shall make. . . draw. . . or utter or give any check upon any bank. . . wherein such maker or drawer shall not have sufficient funds or credit for the payment of same, shall be guilty of a misdemeanor." (Emphasis added.)

The penalty was changed and a significant new clause as follows was added:

". . . and the fact that payment of such check, when presented in the usual course of business, shall be refused by such bank. . . for lack of sufficient funds to the credit of the drawer or maker with which to pay the same, shall be prima facie evidence of the fraudulent intent hereinabove mentioned." Colo. Sess. Laws 1915, ch. 71, § 1.

This statute, as so amended, appeared in 1921 Compiled Laws, ch. 153, § 6938 and 1935 C.S.A. ch. 48, § 313. It then came under judicial scrutiny in 1951 in the case of

*Moore v. People,* 124 Colo. 197, 235 P.2d 798. In that case, this court held that a check given for a past due account and returned by the bank marked "insufficient funds" did not constitute a violation of C.R.S. '53, 40-14-10 (the then current embodiment of the 1915 Act) because the complaining witness had not been defrauded in any manner by the transaction. Addressing itself to the section of the statute dealing with the prima facie case, this court stated:

"Under the statute, the giving of a check that is turned down by the bank on which it is drawn because of insufficient funds, is a prima facie case of a misdemeanor. . . . This places the burden of disproving intent on the defendant. Contrary to the rule. . . that a defendant in a criminal case is presumed to be innocent until proven guilty, here the action of the bank, even though it be erroneous, places the burden on the defendant. . . . the prosecution could rest as having made a prima facie case by the fact that payment of the check was refused by the bank, and thus criminal evidence of intent to defraud was established. . . . The general rule that criminal intent will be presumed from the commission of the unlawful act, does not apply under the statute, because the crime consists of the act combined with a specific intent, and proof of the commission of the act does not warrant any presumption that defendant had specific intent to defraud. . . . The law will not presume an intention beyond what was accomplished by the act, and therein lies the danger of the concluding paragraph of the statute making the action of the bank prima facie evidence of intent. Here the act of a third party is evidence of criminal intent of defendant, nevertheless, this prohibited presumption creeps into the prima facie case under the provisions of the statute."

Our court in *Moore* did not declare the statute invalid because of the prima facie case provision, but held that because of the reasons advanced in the preceding quotation, prosecutions under the Act should be closely scrutinized. We have quoted at length from *Moore* because much of what was said therein as dictum is directly relevant to the statute under consideration in the case before us.

It was not until 1957 that the General Assembly enacted a statute replacing the one criticized in *Moore.* Colo. Sess. Laws 1957, ch. 126, §§ 1-5. That statute provided in essential part as follows:

"(1) Any person. . ., who *with intent to defraud or deceive,* shall make or draw or utter or deliver any check. . . upon any bank. . . wherein such maker. . . shall not have sufficient funds or credit for the payment of the same, and thereby obtains from any person. . . any [thing of value], or who with the intent to defraud or deceive shall make [etc.] any check. . . upon any bank. . . wherein such maker or drawer shall not have sufficient funds or credit for the payment of the same, for the payment of services, wages, salary, labor or rent, shall be guilty of a misdemeanor."

The foregoing 1957 enactment, later cited as C.R.S. 1963, 40-14-20, increased the severity of the prescribed penalty, but deleted any provisions having to do with presumptions or prima facie cases.

C.R.S. 1963, 40-14-20 was amended slightly in 1965. In addition, subdivision (5) was repealed and replaced by several new subdivisions. Subdivision (6) declared that if the check was for more than $50, or if several checks totaling more than $50 were given within one thirty day period, the offense was to be a felony rather than a misdemeanor. 1965 Perm. Supp., C.R.S. 1963, 40-14-20(6).

In 1967, Subdivision (6) was further amended, apparently in order to insure that the phrase "with intent to defraud or deceive" was clearly applicable to both the one check for $50 and to the series of checks totaling $50. 1967 Perm. Supp., C.R.S. 1963, 40-14-20(6).

In 1969, House Bill No. 1087 as originally introduced provided that any person, who *with intent to defraud,* should give a check, *knowing at the time of making* that the drawer or maker had no deposit, or had not sufficient funds, for the full payment of the check when presented would be guilty of a misdemeanor if the check was for less than $50 and a felony if it was for more than $50. Subdivision (4) stated:

"In any prosecution under this section against the maker or

drawer thereof, the making, drawing, uttering, or delivery of a check. . . payment of which is refused by the drawee because of insufficient funds or credits, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credits with, such bank. . . if such maker or drawer shall not have paid the holder thereof the amount due thereon, within fifteen days after receiving notice that such check. . . has not been paid by the drawee."

The proposed statute defined notice as to include oral and written notice of dishonor. Subdivision (5) excepted postdated checks and those checks of which the payee had knowledge that the maker did not have the funds on deposit to pay the checks.

Substantial amendments were made to House Bill No. 1087 before it was passed by the General Assembly. At this juncture, it is sufficient to say that the amended version as passed by the General Assembly was basically the same statute ultimately enacted in 1970 with certain critical variations in definition.

For some unexplained reason, a "rider" concerning the criminal law of trespass was attached to H.B. 1087 as it progressed through the legislative process. For this reason, the Governor vetoed the bill on July 14, 1969.

The measure was reintroduced in 1970 as Senate Bill No. 28. As indicated above, S.B. 28 closely resembled 1969 H.B. 1087 with the deletion of the trespass section. However, an important definitional change in the term "insufficient funds" was made and another important change occurred in the definition of the criminal act itself. C.R.S. 1963, 40-14-20, as amended, now provides that a person is guilty of issuing a bad check when:

"(b) He utters a check knowing or having reasonable cause to know at the time of uttering it that it will not be paid, and it is not paid because of insufficient funds.

(c) He passes a check knowing or having reasonable cause to know at the time of passing it that it will not be paid, and it is not paid because of insufficient funds;"

Section 5(a)(i) provides:

"Except as to post-dated checks, a person who utters a check which is later dishonored is presumed to know or to have reasonable cause to know that it will not be paid when:

(ii) The drawer has no checking account or credit with the drawee at the time of uttering the check; or

(iii) The check is presented to the drawee not more than thirty days after the date it was uttered and the drawer has insufficient funds with the drawee when the check is presented; or

(iv) Presentation cannot be made because, at the time the check is uttered, the named drawee is not... regularly engaged in the banking business at the location shown on the check."

The 1970 Act was based on the amended version of 1969 H.B. 1087 which, in turn, was purportedly based on a Kansas statute found in K.S.A. 21-554 and 21-555. The Kansas statute is somewhat of an anomaly, but it did require intent to defraud. It also provided that the refusal of payment would constitute a prima facie case of intent to defraud [21-555b]. We note that 21-554 and 21-555 were repealed by the Kansas legislature in 1969 and replaced by a statute found in Kan. Sess. Laws 1969, ch. 180, § 21-3707. The new Kansas statute requires that a person giving a bad check must intend to defraud and know at the time of issuing the check that it will not be paid either because he has no account or because of insufficient funds.

We have embarked on this somewhat extended historical digression in order to illustrate several points which, in our view, are important in the resolution of the issue now before us. First, we note the many revisions which the bad check law has undergone, especially in recent years. Because of this, we are quite frankly unable to discern the precise legislative intent behind the present statute. Secondly, we note that until 1970, intent to defraud had always been an integral element in Colorado's bad check law. The reason for changing this intent to a reasonable cause to know that the check will not be paid when presented for payment is obscure. Surmise and conjecture would lead us to the view

that the apparent intent of the General Assembly was to enable the district attorneys to facilitate prosecutions and obtain convictions more readily in bad check cases. We might also suspect that the present statute was designed to facilitate collections on both bad checks and debts. We were told on oral argument by the district attorney that the gravamen of the statute is to prevent worthless paper from entering the flow of commercial transactions, the resulting effect being to increase the reliability of commercial paper. It is also possible that the new law was aimed at some sort of conformity with the provisions of the Uniform Commercial Code with respect to practices of banks and banking.

■ Whatever reasons prompted the enactment of the present bad check statute, we are compelled to state that it is utterly lacking in the essential elements which ascribe validity and legal sufficiency to any enforceable criminal statute. It is of significance to note also that we have not been directed to any bad check statute of any other state, nor have we been able to discover any jurisdiction which has a statute similar to the Colorado statute.

The trial court found the statute unconstitutional and void because of vagueness, uncertainty, indefiniteness, ambiguity, and unintelligibility. It also found that, in some instances, the statute presumes guilt; that, in some instances, it is selective in prosecution; that the bank involved has the power to decide whether a party is a criminal or a favored customer; and finally, that the statute is a collection statute and imposes imprisonment for debt. We agree with the trial court that these infirmities are present in this statute.

With these general observations in mind, we turn to an examination of the particular deficiencies in this statute.

## II.

■ The district attorney on behalf of the People asserts that it was error for the trial court to hold the entire statute unconstitutional, and argues that even if certain portions of the Act are unconstitutional, the general severability clause of C.R.S. 1963, 135-1-5 would save the rest of the statute. The trial judge ruled that since the enacting clause did not

contain a severability section, the entire Act must fall. We agree with the district attorney that C.R.S. 1963, 135-1-5 would save those portions of the Act not found to be unconstitutional as this general severability clause is applicable to any legislative act not containing a specific severability provision. However, the final portion of C.R.S. 1963, 135-1-5 declares, in effect, that if those unexcised portions of an Act are incomplete and are incapable of being executed in accordance with the legislative intent, the entire Act is void. As will be noted hereinafter, the skeleton of Section 40-14-20 which remains after striking out the invalid provisions, fails to describe any offense. Therefore, the trial court properly declared the entire statute unconstitutional.

III.

We hold that the definition of "insufficient funds" in Section 40-14-20(1)(h) is vague, ambiguous, and unintelligible. That section defines insufficient funds to mean "that the drawer has no legal right to require the drawee to pay the check in accordance with the ordinary course of the banking business." An interesting contrast to this definition is that contained in the amended version of the vetoed 1969 H.B. 1087 which defined "insufficient funds" as follows:

"A drawer has insufficient funds with a drawee to cover a check when he has no funds or account whatever, or funds in an amount less than that of the check; and a check dishonored for 'no account' shall also be deemed to have been dishonored for 'insufficient funds.' "

The above quoted definition spells out an understandable meaning of "insufficient funds" while the 1970 Act leaves the meaning to surmise and conjecture. Criminal liability cannot be predicated on such a standard. What is meant by "legal right?" Does it refer to legal rights as determined by the provisions of Article 4 of the Uniform Commercial Code, C.R.S. 1963, 155-4-101 et seq?; does it mean contractual rights between the drawer and the drawee?; or, does it refer to legal rights created by the provisions of the criminal law? Also, where does one look to determine what accords with "the ordinary course of the banking business?" Is it to the

Uniform Commercial Code, to some other statute, or to the customs and practices of the banking business itself? This failure of the definition to clearly delineate an understandable meaning to the term "insufficient funds" renders this portion of the statute invalid as being vague, indefinite, ambiguous, and unintelligible.

IV.

 Next, we find that the lack of any requirement in Section 40-14-20 that there be an intent to defraud coupled with a presumption of guilt provided in Subdivision (5)(a)(i) would, under certain circumstancies, render Section 40-14-20 to be no more than a device to force payment of debt. It is quite conceivable that a person could issue a check without "knowing or having reasonable cause to know" that it will not be paid when presented as required in Subdivision (2)(b). Thereafter, if the check is for some reason not paid when presented, and if the maker is unable to redeem his check within fifteen days (see Subdivision (6)(b)), a presumption arises which shifts the burden on to the defendant to disprove his guilt. Such a result strikes at the very foundation of our system of criminal justice as was recognized by this court in *Moore v. People, supra.* It is elementary that the burden of proving every element of a criminal charge is upon the prosecution. Under Section 40-14-20, the People need only introduce the check, show it was not paid, and rest. The defendant is then placed in a position of being required to prove his innocence in order to avoid imprisonment not for a criminal act, but for debt. This is so because without fraudulent intent as an element in this type of offense, there can be no crime. In this respect, Section 40-14-20 can be interpreted as nothing more than a collection statute which authorizes imprisonment for debt. As such, it is in contravention of Colo. Const. art II, § 12.

*See* also *Burnam v. Commonwealth,* 228 Ky. 410, 15 S.W.2d 256, which uses the following language to describe a statute which was, in some respects, similar in content to Section 40-14-20:

"The act. . . is a debt collecting law. To that end it

undertakes to invoke criminal processes and to inflict penalties which in their severity may be on occasion disproportionate to the seriousness of the offense endeavored to be created and the evil sought to be cured. The essential and controlling difference between the act and other statutes of this kind,. . . is that the element of fraud or other criminal purpose is not an ingredient."

■ In addition, under the various provisions of Section 40-14-20, the action of a third party, the bank, can often be the factor which determines whether guilt attaches. If two customers each write a check knowing it will not be paid on presentment due to insufficiency of funds in their respective accounts, each should be theoretically guilty of a crime. Yet, the bank upon which the check is drawn has the discretion to dishonor one and pay the other. Such a discretion is at odds with constitutional due process and equal protection of the laws. Criminal liability and punishments should not be predicated upon a third party's unfettered discretion.

V.

■ Consider the following described conflict between two provisions of Section 40-14-20. Subdivision (2) provides that a person is guilty of issuing a bad check when:

"He utters a check knowing or having reasonable cause to know *at the time of uttering it* that it will not be paid, and it is not paid because of insufficient funds." (Emphasis added.) Subdivision (5)(a)(iii), the section establishing the presumption of guilt referred to heretofore, provides that the presumption arises if:

"The check is presented to the drawee not more than *thirty days* after the date it was uttered and the drawer has insufficient funds with the drawee *when the check is presented.*" (Emphasis added.)

Subdivision (2)(a) creates a crime when the drawer knows at the time of issuance that the check will not be paid. Subdivision (5)(a)(iii) provides that the drawer is presumed guilty if he has insufficient funds when the check is presented at any time within thirty days of its issuance, regardless of criminal intent, and regardless of what the drawer knew or

had reason to know when he issued the check. This is but another example of how criminal liability can occur because of the actions of a third party and regardless of any criminal or fraudulent intent on the part of the drawer.

This question then arises: Is the penalty imposed for issuing the bad check, for failure to make satisfaction of the check, or for not being able to cover the check when presented? What was stated in *State v. Nelson,* 58 S.D. 562, 237 N.W. 766 is directly applicable here.

"In view of this section, the execution and delivery of the check by the defendant does not constitute a complete offense. It is not until the check has been presented at or after maturity and payment refused for lack of funds that the crime was complete; therefore the penalty fixed by the law is for failure to pay the check rather than for issuing the check."

Because of this inconsistency which taints the statute as a whole, a declaration of invalidity is on this basis also required.

## VI.

Finally, Section 40-14-20(6)(b) provides that it shall be a complete defense to a prosecution if:

"(b) The defendant or a person acting on his behalf made full satisfaction of the amount of the check or tendered cash or certified funds in the full amount of the check within fifteen days after dishonor. . ."

This section also gives a third person control over whether or not a bad check passer is convicted. This provision also makes it appear that the entire statute is a collection device. *See State v. Nelson, supra.* The creditor or holder of the check can easily say that he will not cause a complaint to be filed if he gets his money within fifteen days. Regardless of motive or possible civil defenses to the debt, the check passer might have to satisfy the creditor's claim in order to avoid criminal liability. In addition, this subdivision might be interpreted to sanction what is prohibited by C.R.S. 1963, 40-7-34, the compounding statute.

\* \* \* \* \* \*

418

For the foregoing reasons, we find that C.R.S. 1963, 40-14-20, as amended by Colo. Sess. Laws 1970, ch. 48, is unconstitutional as a deprivation of due process and equal protection of the law. Many of its provisions are vague, uncertain, ambiguous, and unintelligible. Some of its provisions are inconsistent with each other, and in several respects, its operation is made to depend on the acts of a third person, not the drawer himself.

Judgment affirmed.

MR. JUSTICE KELLEY concurs in the result.