**The PEOPLE of the State of Colorado, Petitioner-Appellant, In the Interest of C. M., Minor Child-Appellee, And Concerning E. M., Respondent.**

**No. 80SA92.**

Supreme Court of Colorado, En Banc.

June 29, 1981.

Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief, Appellate Deputy Dist. Atty., Guy Till, Deputy Dist. Atty., Denver, for petitioner-appellant.

J. Gregory Walta, Colorado State Public Defender, Michael Heher, Deputy State Public Defender, Denver, for minor-child appellee.

QUINN, Justice.

The People appeal from an order of the Denver Juvenile Court holding unconstitutional section 18–9–112(2)(d), C.R.S.1973 (1978 Repl.Vol. 8), commonly referred to as the school loitering statute. We conclude that section 18–9–112(2)(d) is unconstitutionally vague in violation of due process of law under the Fourteenth Amendment to the United States Constitution and Article II, Section 25, of the Colorado Constitution. Accordingly, we affirm the juvenile court.

Section 18–9–112(2)(d) states that a person commits a class 1 petty offense if he: "Loiters in or about a school building or grounds, not having any reason or relationship involving custody of, or responsibility for, a pupil or any other specific, legitimate reason for being there, and not having written permission from a school administrator." A class 1 petty offense is punishable by a fine of not more than five hundred dollars or imprisonment for not more than six months, or both. Section 18–1–107, C.R.S.1973 (1980 Supp.). The word "loiter" is defined in section 18–9–112(1), C.R.S.1973 (1978 Repl.Vol. 8), as "to be dilatory, to stand idly around, to linger, delay, or wander about, or to remain, abide, or tarry in a public place."

On October 1, 1979, a petition in delinquency was filed alleging that on or about July 25, 1979, in Denver, Colorado, C.M., then sixteen years of age, did unlawfully loiter "in or about the building and grounds of EAST HIGH SCHOOL, a school, having no reason nor relationship involving custody of, or responsibility for a pupil, nor having any other specific legitimate reason for being there, and without written permission from a school administrator...." C.M. filed a motion to dismiss the petition, claiming that section 18–9–112(2)(d) was constitutionally infirm in several respects, including vagueness. The juvenile court found the statute unconstitutional and dismissed the petition.[1]

■ The basic issue on this appeal is whether section 18–9–112(2)(d) is void for vagueness. Before addressing this issue, certain basic rules of constitutional adjudication are worthy of repetition. A statute is presumed to be constitutional and the burden is on the party attacking the statute to establish its unconstitutionality beyond a reasonable doubt. *People v. Albo*, 195 Colo. 102, 575 P.2d 427 (1978); *People v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974); *People v. Summit*, 183 Colo. 421, 517 P.2d 850 (1974). Also, if a statute is susceptible to different interpretations, one of which comports with constitutional requirements, the constitutional construction must be adopted. *E. g., People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979); *People v. Washburn*, 197 Colo. 419, 593 P.2d 962 (1979); *Duprey v. Anderson*, 184 Colo. 70, 518 P.2d 807 (1974).

■ Generally, one is not entitled to assail the constitutionality of a statute except as he is adversely affected by its application to him in a given case. *E. g., People v. Wimer*, 197 Colo. 191, 591 P.2d 87 (1979); *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975). Where, however, as here, the constitutional challenge is to those very statutory terms which constitute the basis of the underlying prosecution, requisite standing exists. *See, e. g., L.D.S., Inc. v. Healy*, 197 Colo. 19, 589 P.2d 490 (1979); *People v. Vinnola*, 177 Colo. 405, 494 P.2d 826 (1972). Neither a detailed charging document nor a fully developed factual record can serve to validate a law which on its face is so vague as to violate due process of law. *E. g., Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890 (1939).

The void-for-vagueness doctrine provides protection against the impairment of several basic values:

"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasona-

---

1. In granting the motion to dismiss the juvenile court relied on *Goldman v. Knecht*, 295 F.Supp. 897 (D.Colo.1969), and *People v. Gibson*, 184 Colo. 444, 521 P.2d 774 (1974). *Goldman* held the Colorado vagrancy statute unconstitutional for several reasons including its vagueness, its arbitrary classification in violation of equal protection of the laws, and its proscription of status in violation of due process of law. *Gibson* held unconstitutional (1971 Perm.Supp.) C.R.S.1963, 40–9–113(2)(c), which prohibited loitering for the purpose of engaging or solicit-

ing another to engage in deviate sexual intercourse. *Gibson's* holding appears to be based on substantive due process considerations arising from the statute's failure to require "the loitering ... be coupled with any other overt act," 184 Colo. at 446, 521 P.2d at 775, rather than on any vagueness in the statutory proscription. However, we are convinced that, regardless of its questionable reliance on *Gibson*, the juvenile court's holding of unconstitutionality is fully justified under a void-for-vagueness analysis.

ble opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas were clearly marked.' " *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972).[2]

*See, e. g., Lanzetta v. New Jersey, supra; Cline v. Frink Dairy Co.,* 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927); *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 (1921); *see also* Note, *Orders to Move on and the Prevention of Crime,* 87 *Yale L.J.* 603 (1978). This doctrine is no stranger to Colorado and has been utilized by this court on prior occasions to invalidate vague statutory proscriptions. *E. g., L.D.S., Inc. v. Healy, supra; People v. Vinnola, supra; Cokley v. People,* 168 Colo. 280, 450 P.2d 1013 (1969).

In *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), the United States Supreme Court struck down a vagrancy ordinance that included within its proscription various forms of loitering because the ordinance failed to furnish adequate notice of the proscribed conduct and invited arbitrary enforcement. The Court stressed initially the broad sweep of the ordinance's prohibitions. The inclusion of such conduct as "walking or strolling around from place to place without any lawful object or purpose" makes criminal those activities "which by modern standards are normally innocent" and "historically [are] part of the amenities of life as we have known them." 405 U.S. at 163–64, 92 S.Ct. at 844, 31 L.Ed.2d at 116–17. Secondly, the Court pointed up that "[d]efiniteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution," although not engaging in overt criminal conduct. *Id.* at 166, 92 S.Ct. at 845, 31 L.Ed.2d at 118, quoting Frankfurter, J., dissenting in *Winters v. New York,* 333 U.S. 507, 540, 68 S.Ct. 665, 682, 92 L.Ed. 840, 862 (1948).

■ The People argue that section 18–9–112(2)(d) is susceptible to a construction that restricts loitering to an identifiable area in the interest of maintaining a safe and proper school environment and such construction, in contrast to the ordinance struck down in *Papachristou*, does provide adequate notice of the proscribed conduct to persons of ordinary intelligence and eliminates the danger of selective and arbitrary enforcement. We find this argument legally unsound for several reasons.

First, contrary to the People's reading of the statute, section 18–9–112(2)(d) does. not restrict loitering to a readily identifiable area, such as "*in* the school building" or "*on* the school grounds." The use of the preposition "about" in relation to the situs of the loitering illustrates the broad sweep of the statutory proscription. The term "about the school building or grounds" clearly would include a geographical area immediately surrounding these points of reference. However, "about" in this statutory context also is so general in meaning as arguably to encompass any place in the *vicinity* or *neighborhood* of the school building or grounds. *See Webster's Third New Inter-*

---

2. Because we conclude that section 18–9–112(2)(d) violates due process of law by failing to provide a person of ordinary intelligence with adequate notice of the proscribed conduct, we do not consider whether the statute is unconstitutionally overbroad by unduly infringing on First Amendment freedoms or other basic constitutional rights.

*national Dictionary* (1961). It is not uncommon for urban school grounds to cover an area that is equivalent in size to a city block. How close to the bounds of the school grounds one must be to be considered "about" those grounds cannot be answered with any degree of certainty.

Second, the People's argument erroneously presupposes that any uncertainty in the statutory proscription is dispelled by the nexus between the proscribed conduct and the maintenance of a safe and proper school environment. Assuming *arguendo* that "loitering or strolling on public property which obstructs the orderly government process . . . might be within the scope of [legitimate] legislative prohibition," *People v. Gibson*, 184 Colo. 444–46, 521 P.2d 774–75, quoting *Goldman v. Knecht*, 295 F.Supp. 897–905 (D.Colo.1967); *see also Grayned v. City of Rockford, supra*, section 18–9–112(2)(d) does not purport to prohibit loitering only when it is likely to have an adverse effect on the educational process. The statute neither requires a demonstrable causality between the conduct and the impairment of school functions nor does it even require that the conduct occur while school is in session. For this court to read such requirements into the statute would implicate us in wholesale legislative revision, a matter within the exclusive province of the General Assembly. *See, e. g., People v. Kanan*, 186 Colo. 255, 526 P.2d 1339 (1974); *People v. Summit*, 183 Colo. 421, 517 P.2d 850 (1974); *People v. Herrera*, 183 Colo. 155, 516 P.2d 626 (1973); *Cokley v. People, supra*.

Additional uncertainties exist in the statutory terminology, one of which is the language "not having . . . any other specific, legitimate reason for being there." Customary uses of "legitimate" include: genuine; accordant with law or with established legal requirements; conforming to recognized principles or accepted rules and standards; and reasonable. *Webster's Third New International Dictionary* (1961). The inclusion of such an open-ended element as a qualification of criminal conduct well might be "a trap for innocent acts," *Papachristou v. City of Jacksonville, supra*, 405 U.S. at 164, 92 S.Ct. at 844, 31 L.Ed.2d at

116, and only serves to compound the already existing uncertainty in the statutory definition of loitering.

There is also ambiguity with respect to what elements might be essential to criminal liability. In addition to (1) loitering, (2) in or about a school building or grounds, and (3)(a) without any reason or relationship involving custody of, or responsibility for, a pupil, or (3)(b) without any other specific, legitimate reason for being there, this statute requires that an offender not have "written permission from a school administrator." Arguably, the person who remains in or about the school building or grounds for what he or she reasonably believes is a specific, legitimate reason need not obtain written permission from the school administrator to avoid criminal liability. Under this construction, only those in or about the school building or grounds under no reasonable claim of specific, legitimate reason would be required to have written permission to be there. On the other hand, one might contend that unless a person has written permission from the school administrator, he or she has no "specific, legitimate reason for being there." Under this construction, if that person's presence was unrelated to custody of or responsibility for a pupil, he or she would be subject to prosecution under the statute.

One need not resort to bizarre or extreme examples to underscore the infirmity in statutory proscription underlying section 18–9–112(2)(d). The statute prohibits lingering, delaying, wandering or remaining in or about school grounds. A parent "lingering" in the playground facilities of the school with his or her pre-school infant, a teenager "delaying" on the grounds in order to walk home with a student friend who shortly will leave the school building, an adult "wandering" near the school grounds for an evening walk, a youth "remaining" on the school grounds during a weekend afternoon to make use of an outdoor basketball court—none of these persons can claim with reasonable assurance that their conduct is not included within the broad sweep of the statutory prohibition. Statu-

tory language which strikes such an amorphous and uncertain line of demarcation between criminal conduct and what the ordinary person would consider normal and legitimate behavior cannot survive a constitutional challenge under the Due Process Clause of the federal and state constitutions. *U.S.Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25.[3]

The absence of objective criteria in the statutory proscription points up the serious potential for arbitrary and discriminatory enforcement. A standardless delegation of discretion in enforcement impinges on basic notions of fairness at the root of the void-for-vagueness doctrine. *See, e. g., Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *Arnold v. City and County of Denver,* 171 Colo. 1, 464 P.2d 515 (1970). " 'It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.' " *Papachristou v. City of Jacksonville, supra* 405 U.S. at 165, 92 S.Ct. at 845, 31 L.Ed.2d at 117, *quoting United States v. Reese,* 92 U.S. 214, 221, 23 L.Ed. 563, 566 (1878).

The judgment is affirmed.

---

**3.** In addition to *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), there is an abundance of authority supporting our holding that section 18–9–112(2)(d) is unconstitutionally void for vagueness. *E. g., Powell v. Stone,* 507 F.2d 93 (9th Cir. 1974), *rev'd on other grounds,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States ex rel. Newsome v. Malcolm,* 492 F.2d 1166 (2d Cir. 1974), *aff'd on other grounds sub nom., Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975); *United States v. Kilgen,* 431 F.2d 627 (5th Cir. 1970), *modified on other grounds,* 445 F.2d 287 (1971); *Goldman v. Knecht, supra; State v. Grahovac,* 52 Hawaii 527, 480 P.2d 148 (1971); *Balizer v. Shaver,* 82 N.M. 347, 481 P.2d 709 (1971); *People v. Berck,* 32 N.Y.2d 567, 300 N.E.2d 411, 347 N.Y.S.2d 33 (1973), *cert. denied,* 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973); *City of Portland v. James,* 251 Or. 8, 444 P.2d 554 (1968); *City of Bellevue v. Miller,* 85 Wash.2d 539, 536 P.2d 603 (1975).