The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

David George MASON, Defendant-Appellant.

No. 81SA171.

Supreme Court of Colorado, En Banc.

March 8, 1982.

Rehearing Denied March 29, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., David K. Rees, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Robert C. Floyd, Denver, for defendant-appellant.

QUINN, Justice.

The defendant, David George Mason, was convicted of soliciting for prostitution, section 18–7–202, C.R.S.1973 (1978 Repl. Vol. 8), pandering, section 18–7–203, C.R.S.1973 (1978 Repl. Vol. 8), and pimping, section 18–7–206, C.R.S.1973 (1978 Repl. Vol. 8). He claims on this appeal that the statutory scheme proscribing offenses relating to prostitution is unconstitutional, that the evidence was insufficient to support his convictions, and that the court erred in instructing the jury on complicity.[1] Finding no error, we affirm.

## I.

The information as originally filed charged the defendant and Susan Neitzel with five counts based on offenses committed during the period of February 9 to June 5, 1979, in Arapahoe County, Colorado: one count of pimping by knowingly living on or being supported or maintained by money earned by Dianne Strong and Linda Kingrey through prostitution; two counts of soliciting for prostitution; and two counts of pandering. Prior to trial Susan Neitzel entered into a plea bargain and became the prosecution's principal witness against the defendant.

The charges arose out of the establishment and operation of a female escort service by the defendant and Neitzel. According to the prosecution's evidence the defendant employed forty to fifty women as female escorts during the period in question. These escorts worked solely for "tips", which were monies paid to them by customers for acts of prostitution. Neitzel hired the escorts, supervised the telephone answering service and bookkeeping aspects of the operation, and regularly met with the escorts to collect the fee owed to the service. The defendant's primary responsibility involved the composition and placement of newspaper advertisements under various names, including Danish Escorts, Pretty Baby Escorts, Copenhagen Ladies, Campus Cuties Escorts and Plato's Sexy Lady Escorts. A typical ad would read:

DANISH ESCORTS

861–7045

Major credit cards accepted

When a customer called the service in response to an ad he was told that there would be a $20 hourly fee paid to the service. This fee entitled the customer to a "nude switch body rub" which, according to Neitzel, consisted of a rub of the front and back side of the body, exclusive of intimate parts, administered by the escort to the customer and then by the customer to the escort, with both parties in the nude. The customer also was informed that "tipping" was discretionary and a female escort would call back shortly to answer any questions. After the customer placed a call with the service, one of the escorts would be contacted and a record made of the call for accounting purposes. The escorts would account twice weekly to Neitzel for the service fee due on the specific calls referred to them.

According to Neitzel the escort service was indistinguishable from prostitution and there were very few calls which did not result in an act of prostitution. In fact if no act of prostitution occurred, the escort ordinarily would not be required to refund the service fee for her call. The defendant often referred to the escorts as "stupid whores" and on slow days he would make such statements as, "come on, let's hurry up and get these tricks." Customers who did not negotiate an act of prostitution with the escort were commonly referred to as "bad calls."

On the evening of June 5, 1979, an officer of the Arapahoe County SCAT unit made a telephone call to the escort service and posed as a customer responding to a newspaper ad for Danish Escorts. The officer arranged by telephone for himself and another officer to meet two escorts in an Aurora motel room. After this initial call

---

1. This appeal was originally filed in the Court of Appeals but was transferred to this court because of the constitutional issues raised by the defendant. *See* sections 13–4–102(1)(b) and 13–4–110, C.R.S.1973.

Dianne Strong and Linda Kingrey contacted the officer by telephone to confirm the appointment and later showed up at the motel. After explaining to the officers the agency fee of $20 per hour, they offered to perform an act of sexual intercourse and fellatio for $100. The officers paid each woman $100, plus the additional $20 for the agency's hourly fee. After the money was exchanged, the women started to undress and were arrested.

The court denied the defendant's motion for judgment of acquittal at the conclusion of the prosecution's case and the defendant elected not to present evidence. With respect to the charges of soliciting for prostitution and pandering the court submitted the following instruction to the jury:

"A person is legally accountable for the behavior of another constituting a criminal offense such as Soliciting for Prostitution or Pandering if, with the specific intent to promote or facilitate the commission of such offense, he aids, abets, or advises such other person in planning or committing such offense, and such other person commits the offense."

The jury returned guilty verdicts to all counts and this appeal followed in due course.[2]

We first address the defendant's constitutional challenges to his convictions, next his claim of evidentiary insufficiency, and then his argument on the complicity instruction.

## II.

The defendant's constitutional claims are several. However, before addressing them specifically, we briefly set out the statutory proscriptions to which his constitutional challenges and other arguments are directed.

Section 18–7–201(1), C.R.S.1973 (1978 Repl. Vol. 8), classifies prostitution as a class 3 misdemeanor and defines that offense as follows:

"Any person who performs or offers or agrees to perform any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse with any person not his spouse in exchange for money or other thing of value commits prostitution."

Under section 18–7–202, C.R.S.1973 (1978 Repl. Vol. 8), a person commits soliciting for prostitution if he solicits another for the purpose of prostitution, arranges or offers to arrange a meeting of persons for the purpose of prostitution, or directs another to a place knowing such direction is for the purpose of prostitution. Pandering is defined in section 18–7–203(1)(b), C.R.S. 1973 (1978 Repl. Vol. 8), to include the act of knowingly arranging or offering to arrange, for money or other thing of value, a situation in which a person may practice prostitution. Section 18–7–206, C.R.S.1973 (1978 Repl. Vol. 8) defines pimping as follows:

"Any person who knowingly lives on or is supported or maintained in whole or in part by money or other thing of value earned, received, procured, or realized by any other person through prostitution commits pimping, which is a class 5 felony."

### A.

The defendant's due process, equal protection and constitutional privacy claims are interrelated and proceed from the same source, namely, the statutory definition of prostitution in section 18–7–201(1). This statute defines prostitution so as to include within its proscription sexual acts between non-married persons in consideration of money or other thing of value, but excludes these same acts between married partners even though performed for money or other valuable consideration. With this statutory differentiation as a foundation the defendant's arguments, simply stated, are as fol-

---

**2.** On his conviction for pimping, a class 5 felony, the defendant was sentenced to an indeterminate sentence not to exceed five years and fined in the amount of $5,000. The sentence was suspended on the condition that the de-

fendant successfully complete probation. On the remaining counts of soliciting and pandering, which are class 3 misdemeanors, the defendant was sentenced to concurrent terms of 30 days in the county jail.

lows: the legislative recognition that a marital partner, without risking criminal liability, may sell sexual favors to the other partner is a repudiation of any legitimate governmental interest in proscribing the same conduct between unmarried persons and, consequently, any such proscription violates due process of law, *U.S.Const.* Amend. XIV; the statutory definition of prostitution irrationally discriminates between marital and non-marital sexual conduct in violation of equal protection of the laws, *U.S.Const.* Amend. XIV; and the statutory proscription of prostitution infringes upon one's constitutional right of privacy in consensual sexual activity, *U.S. Const.* Amend. IX and XIV.

■ We find these arguments devoid of merit. Initially we note that one is not "entitled to assail the constitutionality of a statute except as he himself is adversely affected." *People v. Blue*, 190 Colo. 95, 101, 544 P.2d 385, 389 (1975). It is not our function to "overturn statutes presumptively valid on the strength of the speculations and conjectures of counsel as to what might happen under them." *Bayly Co. v. Department of Employment*, 155 Colo. 433, 437, 395 P.2d 216, 218 (1964). The record here is lacking a clear demonstration of how the differentiation in section 18–7–201(1) between non-marital and marital sexual conduct implicates the defendant's conviction for soliciting, pandering and pimping. Neither soliciting nor pandering entails an act of prostitution as essential to criminal liability. Although the crime of pimping requires proof that the accused knowingly lived on money earned through prostitution by another, there is not the slightest suggestion in the record that the pimping conviction was based upon sexual acts between persons married to each other. Under these circumstances the defendant's standing to raise the alleged infirmity in the statutory definition of prostitution as a basis for reversal may be seriously questioned. The People, however, have not challenged his standing and under these circumstances we elect to resolve the defendant's constitutional claims on their merits.

■ For purposes of due process, the state's interest in curbing prostitution cannot be denied. The health hazards posed by this activity as well as the high incidence of other criminal conduct associated with it are ·legitimate considerations which by themselves support legislative intervention in this area. *See, e.g., State v. Armstrong,* 282 Minn. 39, 162 N.W.2d 357 (1968); *Hensley v. City of Norfolk*, 216 Va. 369, 218 S.E.2d 735 (1975); *Salt Lake City v. Allred*, 20 Utah 2d 298, 437 P.2d 434 (1968); *Seattle v. Jones*, 79 Wash.2d 626, 488 P.2d 750 (1971). The legislative decision to restrict prostitution to commercial sexual activity between persons who are not married to each other is consistent with the heightened privacy interest which the constitution accords to the marital relationship. *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *see also Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

■ The defendant's equal protection argument likewise must fail. In the absence of a fundamental right or a suspect classification, neither of which can be legitimately claimed in this case, equal protection of the laws only requires that a statutory classification rest upon a rational basis. *E.g., People v. Brown*, Colo., 632 P.2d 1025 (1981). The privacy interest of married persons in their sexual relations as well as the qualitatively distinct health and safety hazard associated with commercial sexual activity between persons who are not married to each other provide a rational basis for the statutory difference in treatment.

■ The defendant's privacy argument is similarly untenable. Any liberty interest which unmarried persons might have in non-commercial and consensual sexual activity conducted between themselves in an atmosphere of privacy, *see Morgan v. City of Detroit*, 389 F.Supp. 922 (E.D.Mich.1975); *State v. Pilcher*, 242 N.W.2d 348 (Iowa 1976); *People v. Onofre*, 72 App.Div.2d 268, 424 N.Y.S.2d 566 (1980), would be personal to themselves and certainly would not extend to a third party, such as the defendant, charged with soliciting, pandering and

pimping. Such offenses are directed at curbing the exploitation of commercial prostitution practiced by others and do not involve the offender's personal interest in sexual liberty at all.

## B.

 The defendant also argues that the statutory scheme is unconstitutionally vague and overbroad. We disagree. The statutory definitions of soliciting, pandering and pimping are sufficiently clear to inform persons of ordinary intelligence of the character of the prohibited conduct and to permit them to conform their conduct to the requirements of law. *See, e.g., People v. Latsis*, 195 Colo. 411, 578 P.2d 1055 (1978); *People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975); *People v. Summit*, 183 Colo. 421, 517 P.2d 850 (1974). Nor are we persuaded that the statutory scheme suffers from constitutional overbreadth. The overbreadth doctrine is applicable to legislative enactments which threaten the exercise of fundamental or express constitutional rights, such as first amendment freedoms. *People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979). We know of no constitutionally protected right the exercise of which would be threatened by the legislative prohibition of soliciting, pandering and pimping. *See People v. Stage*, 195 Colo. 110, 575 P.2d 423 (1978).

## C.

 Relying on our decision in *People v. Vinnola*, 177 Colo. 405, 494 P.2d 826 (1972), the defendant claims the statutory scheme unconstitutionally delegates to third persons, such as the female escorts, the discretion to determine his criminal responsibility for acts of prostitution committed by the escorts with their customers. In *Vinnola* this court declared the fraud-by-check law unconstitutional because it provided that a third party, the drawee bank, could determine criminal liability by either dishonoring or paying the check after the offender had already issued it without sufficient funds and with the intent to defraud. In contrast to *Vinnola*, a defendant's liability for soliciting, pandering and pimping is not depend-

ent upon a discretionary act of a third party subsequent to the commission of the acts proscribed by the statute defining the offense. The offense of soliciting is complete when the offender solicits another for prostitution, arranges or offers to arrange a meeting of persons for the purpose of prostitution, or directs another to a place knowing such direction is for the purpose of prostitution. Section 18–7–202, C.R.S.1973 (1978 Repl. Vol. 8). Pandering is committed when a person knowingly for money arranges or offers to arrange a situation in which a person may practice prostitution. Section 18–7–203(1)(b), C.R.S.1973 (1978 Repl. Vol. 8). The prostitute's subsequent decision to engage or not to engage in a sexual act with her customer is not essential to these crimes. In the case of pimping, which admittedly involves a prior act of prostitution, the offense occurs when the offender receives and knowingly lives on the earnings of the prostitute. Once this conduct occurs, no further act of the prostitute, discretionary or otherwise, is essential to criminal liability. Thus, for purposes of *Vinnola*, the criminal character of soliciting, pandering and pimping does not depend upon the discretionary acts of third persons. *See People v. Smith*, Colo., 638 P.2d 1 (1981); *People v. Andrews*, Colo., 632 P.2d 1012 (1981).

## III.

 We proceed to a consideration of the sufficiency of the evidence to support the defendant's convictions. In this respect we must determine whether, when the evidence is viewed as a whole and in a light most favorable to the prosecution, it is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *E.g., People v. Christian*, Colo., 632 P.2d 1031 (1981); *People v. Elkhatib*, Colo., 632 P.2d 275 (1981); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

 There is sufficient evidence to support the defendant's convictions for both counts of soliciting. The jury reasonably could have concluded not only that Linda

Kingrey and Dianne Strong were solicited by the defendant's escort service for the purpose of prostitution but also that they each were dispatched by the escort service to the undercover officers' motel room on June 5, 1979, specifically to engage in prostitution. Similarly, with respect to the charges of pandering, the record contains sufficient evidence to sustain a finding that the defendant, through the pretext of the escort service, knowingly arranged for money a situation in which Linda Kingrey and Dianne Strong might practice prostitution. *See People v. Johnson*, 195 Colo. 350, 578 P.2d 226 (1978). The evidence also is legally sufficient to sustain the defendant's conviction for pimping. The prosecution's witnesses gave unrefuted testimony from which the jury could conclude that the defendant knew Linda Kingrey and Dianne Strong were engaging in acts of prostitution, that they were paying the escort service a fee of $20 for each hour of prostitution, and that the defendant received these fees and applied them to his benefit. *See People v. Ganatta*, Colo., 638 P.2d 268 (1981).

### IV.

The defendant's final contention is that the court erred in instructing the jury on complicity when, as here, he was charged as a principal. Under the complicity principle a person is legally accountable as principal for the criminal conduct of another if, with the intent to promote or facilitate the commission of that crime, he aids, abets or advises the other person in planning or committing the offense. Section 18–1–603, C.R.S.1973 (1978 Repl.Vol. 8). Our decision in *People v. Pepper*, 193 Colo. 505, 508, 568 P.2d 446, 449 (1977), specifically disposes of the defendant's contention:

> "We hold that under section 18–1–603, as before, one charged as a principal may be tried and convicted as a complicitor. *People v. Schiedt*, 182 Colo. 374, 513 P.2d 446; *Fernandez v. People*, 176 Colo. 346, 490 P.2d 690. The district court did not err in instructing the jury that the defendant could be convicted as a complicitor."

The judgment is affirmed.