Patricia Ann GRAY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–458.

Court of Criminal Appeals of Oklahoma.

Oct. 7, 1974.

W. R. Walton, Shattuck, for appellant.

Larry Derryberry, Atty. Gen., Bill James, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Patricia Ann Gray, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Woodward County, Case No. CRF–73–56, for the offense of Obtaining Merchandise by Bogus Check in violation of 21 O.S. 1971, § 1541.2. Her punishment was fixed at a term of two (2) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, the State's first witness, Vickie Charmasson, an employee of the Star Model Store, Woodward, Oklahoma, testified that the defendant purchased some children's clothing on October 1, 1973, and that she took the defendant's check in the amount of $70.88 in exchange for the merchandise. Witness Charmasson identified State's Exhibit # 1 as the check she accepted from the defendant on October 1, 1973. The check, dated October 1, 1973, was drawn upon the Security State Bank of Mooreland, Oklahoma, and signed by Mrs. Joe W. Gray with the defendant's phone number and address. According to witness Charmasson the defendant, Mrs. Gray, was accompanied by three children at the time she made the purchase.

Ted Kyle, the owner of the Star Model Shop, identified State's Exhibit # 1 as the check received from Mrs. Gray and testified that the check was returned by the bank when submitted for payment. Upon its return from the bank, Mr. Kyle telephoned the defendant who said that she would come after the check; however, Mr. Kyle than ran the check through the bank a second time and it was returned for insufficient funds. Mr. Kyle also testified

that he ran another check from the defendant for a lesser amount which was also returned for insufficient funds.

Beth Wells, Assistant Cashier at the Security State Bank of Mooreland, Oklahoma, identified State's Exhibit # 1 and testified that the check was not paid by the bank due to the fact that there were insufficient funds in the account of Joe Gray. Witness Wells also testified that the bank did not have a signature card for Mrs. Gray, only for the husband, Joe Gray. However, witness Wells had processed the check, State's Exhibit # 1, assuming that it was a joint banking account for the husband and wife.

Sudie Pearson testified that she was a sales clerk at Rice's Boy's Store in Woodward, Oklahoma, and the defendant bought clothing for her children on October 1, 1973, in exchange for a check signed by the defendant in the amount of $40.56 drawn on the Security State Bank of Mooreland, Oklahoma. According to witness Pearson, this check, State's Exhibit # 2, was returned by the bank for insufficient funds. She further testified that on the date of the purchase the defendant was present with three children and that the merchandise purchased was children's pants and shirts. Witness Pearson testified that there was an arrangement for repayment due to the return of the check.

Mrs. Charles Rice, owner and manager of Rice's Boy's Store, identified State's Exhibit # 2 as a check returned by the bank for insufficient funds. Mrs. Rice testified that after the check was turned she telephoned the defendant on Wednesday, approximately October 10th, and the defendant said she would be in to the store to make repayment. Mrs. Rice later went to defendant's home seeking repayment for the check, but the defendant did not have the money.

Jane McMurphy, employed as a clerk at the Star Model Store, Woodward, Oklahoma, testified that on the 4th or 5th of October, 1973, she assisted defendant and accepted a check in the amount of $15.60 from the defendant for merchandise. This check identified as State's Exhibit # 3, was drawn on the Security State Bank of Mooreland, Oklahoma, signed by Mrs. Joe Gray and bore the phone number and address of the defendant on the check. The check was returned by the bank for insufficient funds.

Danny Horner, Assistant Manager of the C. R. Anthony Store of Woodward, Oklahoma, testified that he had accepted a check from the defendant in the amount of $53.59 drawn on the Security State Bank of Mooreland, Oklahoma, on October 1, 1973. This was identified as State's Exhibit # 4, and was returned by the bank for insufficient funds. The check bore the correct phone number and address of the defendant. Horner testified that although this check was returned by the bank, another check given by the defendant had cleared the bank.

Robert Aldridge, Manager of the C. R. Anthony Store in Woodward, Oklahoma, testified that State's Exhibit # 4 had been submitted and returned by the bank for insufficient funds. He further identified State's Exhibit # 5 as a certified letter he sent to Mrs. Gray concerning payment of the check. This letter was returned marked "unclaimed." He testified that he received a letter from defendant's attorney, Mr. Walton, recommending that Mrs. Gray had gone to work and would make restitution on the check. He replied, by letter, that any restitution would have to be made through the District Attorney's Office.

The defendant testified that she and her husband had a joint bank account at the Bank of Woodward until approximately October 1, 1973, when her husband opened a new bank account at the Security State Bank of Mooreland, Oklahoma. According to the defendant, shortly before October 1, 1973, her husband's two children from a previous marriage, arrived to live with the defendant and her husband. As these two children arrived without clothing, the defendant was directed, by her husband, to purchase new clothing for them and make

payment for such on the Security Bank account. Mrs. Gray testified that she did not know the amount of the deposits made to the checking account by her husband and that she did not keep, or know, the balance in the account. She testified that her husband was an iron worker and that it was sometimes necessary for him to move from one location to another in order to find employment. The defendant related that her husband was in the State of Maine from approximately October 6th to October 21st seeking employment. Mrs. Gray was under the impression that her husband was making deposits to their banking account during his absence from the State of Oklahoma. When her husband returned to Oklahoma, the defendant learned that he had not found employment, and they were experiencing financial difficulties. After this date, October 21st, upon learning of the financial difficulties, the defendant did not write any further checks on the Security State Bank account.

The defendant further testified concerning several checks on the bank which had been paid. In addition, she testified concerning several checks drawn on the bank which were returned for insufficient funds, but which were subsequently paid. She testified that the check in question, State's Exhibit # 1, was offered by her in the belief that her husband's checking account had sufficient funds to pay for the check. The other checks, State's Exhibits # 2, 3, and 4, were also drawn in the belief that the checking account had sufficient funds to make payment. Upon learning that the checks had not cleared the bank, the defendant believed that she and her husband would make repayment for these checks. It was her husband's inability to find employment, the sole means of support for the defendant, her husband, and four children, which made it impossible for her to make repayment for the checks in question. She further testified that she was presently employed at two part-time jobs and that she had discussed making repayment of the checks in ques-

tion which she would do when she had sufficient funds to do so.

The State called, in rebuttal, A. C. Gaston, Sheriff of Woodward County, who testified that on approximately October 26, 1973, he looked unsuccessfully for the defendant at their Woodward address. Sheriff Gaston later located the defendant and her husband, who were both arrested on bad check charges, in Shattuck, Oklahoma. Defendant was living in Shattuck at that time with her mother because the defendant's trailer home, located in Woodward, Oklahoma, had been repossessed.

■ The defendant's first assignment of error alleges that the verdict is not supported by the evidence. After careful review of the record, we cannot agree. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Jones v. State, Okl.Cr., 468 P.2d 805.

■ The defendant's second assignment of error alleges that the trial court erred in instructing the jury that the intent to defraud was established when the check was returned for insufficient funds, since this placed a burden upon the defendant to prove no intent to defraud which is unconstitutional shifting of the burden to the defendant to prove innocence. A careful examination of the instruction reveals a clear statement of the law, which law, has heretofore been held to be valid. See Gunther v. State, 42 Okl.Cr. 320, 276 P. 239. Furthermore, the instruction objected to by the defendant effectively negated any possible doubt as to who must bear the burden of proof when it provided, in part:

"... and the term prima facie evidence as applied to the evidence does not

shift the burden of proof from the State to the defendant."

Thus, the contention of the defendant in this regard is without merit.

■ The defendant's third assignment of error alleges that the trial court erred in admitting evidence of other crimes, for which the defendant was not on trial. The defendant states that evidence of other bogus checks being passed was not admissible evidence. The general rule is that in a prosecution for one crime, it is not proper to admit testimony against the defendant tending to connect him with the commission of other offenses, for the purpose of establishing his guilt of the offense charged. However, there is an exception to the general rule which is well settled in this jurisdiction, and that is, that such evidence is competent and admissible when it tends to establish a systematic scheme or plan so related that the proof of one tends to establish the other. See Lancaster v. State, 88 Okl.Cr. 133, 200 P.2d 768.

■■ We are of the opinion that evidence of the issuance of other checks by the defendant, under similar circumstances, and on the same date, was relevant to the issue, and was not inadmissible by reason of the fact that it would tend to prove defendant guilty of offenses other than that charged in the information. It was clearly admissible for the purpose of proving guilty knowledge, or the intent with which the act charged was committed. They were acts of the defendant in a continuous series of transactions and were precisely of the same character as the act for which she was being tried. It may be regarded as settled that where the offense charged is so connected with the other offenses sought to be proved, evidence of the latter may be given to show the character of the former. It follows that the court did not err in its ruling in the admission of the objected to evidence.

■ Defendant's fourth proposition, not being supported by any authority, will not be considered. This Court has repeatedly held that it is necessary for counsel for appellant not only to assert error, but to support his contentions by both argument and the citations of authority. Where this is not done, and it is apparent that appellant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion that the trial court has erred. See Sandefur v. State, Okl.Cr., 461 P.2d 954.

The defendant's next assignment of error alleges that the defense of coverture was established and not rebutted by the State, thus rendering a conviction on this evidence impermissible. There was testimony by the defendant that she wrote the check in question as per instructions from her husband. The pertinent part of 21 O. S.1971, § 157, provides:

"A subjection sufficient to excuse from punishment may be inferred in favor of a wife from the fact of coverture whenever she committed the act charged in the presence and with the assent of her husband, except where such act is a participation in . . ."

This Court has held that the general rule that a wife committing a crime is presumed to have acted under her husband's coercion applies only in case of the husband's personal and physical presence at the time of the commission of the offense. See Trapp v. State, Okl.Cr., 268 P.2d 913.

■ In this proposition, defendant further contends that even if the evidence does not establish subjection by coverture sufficient to excuse the defendant as a matter of law, it is submitted that the evidence was sufficient to warrant and require an instruction to the jury that they would be warranted in acquitting the defendant if they found, as a matter of fact, that the defendant's act was the result of coverture. The record does not reveal that the defendant objected to the instructions, nor did she submit requested instructions to the court for consideration. We have consistently held that where counsel is not satisfied with instructions that are given, or desires the court to give any particular, or to more definitely or sufficiently state

any proposition embraced in the instructions, the duty of counsel is to prepare and present to the court such desired instructions and to request that they be given. In the absence of such a request, the Court of Criminal Appeals will not reverse the case if the instructions generally cover the subject matter of inquiry. Schapansky v. State, Okl.Cr., 478 P.2d 912. Even if the defendant had proffered a timely instruction of the defense of coverture, after a careful review of the record, we are of the opinion the evidence did not warrant such an instruction.

■ The defendant's final two assignments of error allege that the trial court abused its discretion in failing to request a pre-sentence report and in denying probation to the defendant for a first conviction for an offense not involving violence or a threat to human safety. Title 57 O.S.1971, § 519, provides in part:

"Whenever a person is convicted of a felony, except when the death sentence is imposed, the Court *may*, before imposing sentence, order a presentence investigation to be made by the Division of Probation and Parole of the Department. . . ." [Emphasis added]

The language of the above statute is clear in that an order for a presentence investigation is purely discretionary with the trial court, and absent a showing of abuse of that discretion, the trial court's ruling will not be disturbed on appeal.

Title 22 O.S.1971, § 991a, provides in part:

"Whenever a person is convicted of a crime and no death sentence is imposed, the court shall either:

(1) Suspend the execution of sentence in whole or in part, with or without probation, or

(2) Impose a fine prescribed by law for the offense, with or without probation or commitment, or

(3) Commit such person for confinement provided for by law. * * *"

■ This Court has clearly covered the matter that the granting of probation is discretionary. In Sargent v. State, Okl. Cr., 509 P.3d 143, we stated:

"We have held before that the question of whether a probation or a suspended sentence is granted is a matter of discretion with the trial court and in the absence of an abuse of that discretion the trial court's ruling will not be overturned. Ramsey v. State, Okl.Cr., 473 P.2d 305 (1970); Hamilton v. State, Okl.Cr., 481 P.2d 471 (1971)."

We find no such abuse of discretion in the instant case; therefore, the trial court's ruling must stand. However, it is recommended to defense counsel that he consider making application to the trial court under the provisions of 22 O.S.1971, § 994, wherein it provides application may be made to the trial court for a suspension of sentence after appeal.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

BRETT, Judge (specially concurring).

With considerable reluctance I concur in this decision; but while doing so I emphasize to defense counsel the provisions of 22 O.S.1971, § 994, pertaining to suspended sentences after appeal. After considering State v. Haremza, 213 Kan. 201, 515 P.2d 1217 (1973), I am convinced that the prima facie presumption is a proper rule of evidence. In the instant case had the defendant approached the various merchants with some good faith offer to make the checks good, after she learned that the bank account was insufficient, the prima facie presumption would no doubt have been overcome. But in the instant case the defendant, through ignorance or misunderstanding or wilfullness, failed to make any effort to contact the merchants until after she was arrested. I am inclined to believe it was through ignorance or misunderstanding, but the jury must have concluded her

lack of an offer to make the checks good was wilful. Under the facts contained in the record before this Court, I believe the trial court should resolve any such doubt in favor of the defendant and grant a suspended sentence. Likewise, because the defendant did obtain two separate jobs and has two small children to support, I believe the proper administration of justice warrants the granting of a suspended sentence.