**Darrell Allen DUNAWAY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–611.**

Court of Criminal Appeals of Oklahoma.

March 3, 1977.

Rehearing Denied March 25, 1977.

Leslie R. Earl, Jr., Public Defender, Andrew E. Wood, Legal Intern, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Alan Foster, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The Appellant, Darrell Allen Dunaway, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–75–2151, with the offense of Obtaining Merchandise by Bogus Check, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 51 and 21 O.S.1971, §§ 1541.1 and 1541.2. The jury found the defendant guilty, and his punishment was fixed at ten (10) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The State put on evidence identifying defendant as the person who presented the check, identified as State's Exhibit No. 1, on the 28th day of August, 1975, to the manager of Bud's Grocery Store in Tulsa County, Oklahoma. State's Exhibit No. 1 was further identified as having been subsequently returned by the National Bank of Tulsa unpaid due to insufficient funds. Exhibits Nos. 2 and 3 were identified as checks presented to Bud's Grocery on the 26th day of August, and returned by the bank for the same reason; Exhibits 2 and 3 were admitted by the court over objection by defendant, for the purpose of proving common scheme or design. State's Exhibit No. 4 was identified as a copy of the National

Bank of Tulsa's statement on the account of Darrell A. Dunaway or Cinzia L. Dunaway, account no. 365957, covering the period from June 9, 1975 until October 24, 1975. State's Exhibit No. 5 was identified as a signature card of that account. The statement, Exhibit No. 4, was admitted over objection of defendant by the court to show common scheme or design.

The State then presented certified copies of judgments and sentences on pleas of guilty by the defendant corresponding to the allegations contained in the second page of the Information filed herein, to which the defense stipulated that the defendant named in the instant case was one and the same as the defendant named in the judgments and sentences.

The defendant put on three witnesses, including his wife, to establish a lack of intent to defraud on the part of defendant and generally showing defendant's financial difficulties during the relevant period.

The defendant next took the stand and testified regarding the problems in keeping the checking account. He further testified that he had had financial difficulties because of illness in the family and because he was unable to keep a job. The defendant then identified checks which he had picked up after they had been returned to the various businesses; these checks were admitted into evidence. On cross-examination, the defendant stated repeatedly that he knew his account had no money in it, but he kept writing checks anyway, intending to pick them up as soon as possible. The defendant specifically admitted cashing State's Exhibit No. 1, which is the check upon which the instant charge is based; additionally, he identified several more checks on cross-examination that he had written, knowing the account to be overdrawn, which checks were also admitted in evidence. However, the defendant repeatedly denied any intent to defraud.

■ The defendant's first assignment of error is that the verdict is not sustained by sufficient evidence. We disagree. The evidence identifying the "false and bogus check" and identifying the defendant as the man who presented that check was clear. The evidence that defendant's account was overdrawn at the time the check was written was equally clear. Further, State's Exhibits 2 and 3 are evidence of checks issued under similar circumstances which tended to prove ". . . guilty knowledge or the intent with which the act charged was committed." *Lancaster v. State,* 88 Okl.Cr. 133, 200 P.2d 768, 771 (1948). In *Gray v. State,* Okl.Cr., 527 P.2d 338, 341 (1974), this Court stated:

> ". . . We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. . . ."

See also *Wooldridge v. State,* Okl.Cr., 502 P.2d 348 (1972).

■ For his second assignment of error, the defendant states that the trial court erred in allowing State's Exhibit No. 4 into evidence in its entirety. And for his third assignment of error, defendant states that the trial court erred by allowing the Assistant District Attorney to make prejudicial and inflammatory statements during the trial and closing arguments, preventing the defendant from having a fair and impartial trial. While this Court feels that there is merit to defendant's second and third assignments of error, after carefully searching the record, we are of the opinion that the defendant was not so prejudiced as to require reversal. In the instant case there was competent State's evidence from which the jury based their verdict. Additionally, the defendant made a judicial confession of every element of the crime charged except intent to defraud. The penalty prescribed by law for Obtaining Merchandise by Bogus Check, After Former Conviction of a Felony, is not less than ten (10) years' imprisonment. The verdict in this case was ten (10)

years, which is the minimum the defendant could have received. In view of the evidence, we feel that a retrial of this case would not result in a different verdict on the issue of guilt and since the defendant received the minimum sentence prescribed by law, prejudice is in no way indicated. It is therefore the opinion of this Court that the errors complained of have neither resulted in a miscarriage of justice, nor constitute a substantial violation of a constitutional or statutory right. See 20 O.S.1971, § 3001. See, also, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), setting out the federal "harmless error" rule to be applied to a denial of a Federal Constitutional right; and *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), applying an "overwhelming evidence" test under the *Chapman* "harmless error" rule.

■ The defendant's fourth assignment of error is that 21 O.S.1971, §§ 1541.1, et seq. are unconstitutional on their face and violate his rights to due process of law. The defendant sets out four contentions on which he bases his claim of unconstitutionality (hereinafter separately considered) and directs this Court's attention to one case supporting these contentions generally, *People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972). We note that while Colorado case law is not binding on this Court, such law would be, at least, persuasive if the statute held unconstitutional was the same as, or at least similar to, the Oklahoma statute under scrutiny herein. Accordingly, an examination of C.R.S.1963, 40–14–20, amended 1970, keeping in mind 21 O.S.1971, §§ 1541.1, et seq., reveals that although some phrases are similar, the statutes are quite dissimilar. The Colorado Court itself stated:

". . . [T]hat we have not been directed to any bad check statute of any other state, nor have we been able to discover any jurisdiction which has a statute similar to the Colorado statute."

*Vinnola,* supra, at 830.

The most significant distinction is that 21 O.S., § 1541.1 requires the "intent to cheat and defraud," while the Colorado statute requires only "knowing or having reasonable cause to know . . . it [the check] will not be paid." In *Vinnola,* supra, at 829 and 830, the Colorado Court stated:

". . . [W]e note that until 1970, intent to defraud had always been an integral element in Colorado's bad check law. The reason for changing this intent to a reasonable cause to know that the check will not be paid when presented for payment is obscure. . . ."

The Colorado Court went on to rely, in part, on this failure to require any criminal intent in holding the Colorado "bad check" law unconstitutional. Because of this basic difference in the Colorado and Oklahoma check statutes, and because of other differences that do not merit our discussion herein, the case of *People v. Vinnola,* supra, is not persuasive on this Court.

We now turn to defendant's specific contentions on which his fourth assignment of error of unconstitutionality is based.

■ First, he contends that the statute allows the bank a check is drawn on to determine guilt by dishonoring checks written by one person and paying checks written by another, depending on who he is, when the account is overdrawn. Apparently, defendant is referring to 21 O.S.Supp. 1975, § 1541.4, which states, in part:

"The term 'false or bogus check or checks' shall include checks or orders which are *not honored* on account of insufficient funds of the maker to pay same, . . ." [Emphasis added]

We note, in passing that the Colorado "bad check" statute held unconstitutional in *Vinnola* did contain a similar provision, and the Court therein, in what appears to be dicta, did agree with defendant's contentions; however, the Colorado Court cited no authority, stating that:

". . . Criminal liability and punishments should not be predicated upon a third party's unfettered discretion."

We agree that while perhaps "criminal liability and punishment" should not be, they almost always are, predicated on at least

another party's unfettered discretion, the victim, and often are predicated on the unfettered discretion of third party witnesses. A bank's employee, like any other witness, may or may not be a moving force in bringing the act of the maker to the attention of the courts, but the mere returning of a check due to insufficient funds is by no means a dispositive determination of guilt. Moreover, under our law, the intent to cheat and defraud, is an element to a finding of guilt and must attach at the time the maker uses, or passes, the false or bogus check. See *Armstrong v. State,* 74 Okl.Cr. 142, 122 P.2d 823 (1942). In any case, a finding of that intent is for the jury. *Wooldridge v. State*, supra. And that intent is not vitiated by the bank if it honors the check; the honoring of the check results only in failure of evidence to prove the act.

■ Defendant next contends that there is an inherent conflict in the statutes attaching guilt to a person upon the uttering of a "bogus check" and then providing further that a presumption of guilt arises after thirty days.

We believe that the defendant is confusing terms of legal significance; we again point out that "guilt" is decided by the jury and attaches only on pronouncement by the jury; we agree that "intent to defraud" must be found and therefore attaches at the time the bogus check is uttered; furthermore, the so-called "presumption" is not a second attachment of intent, and certainly not a presumption of guilt, but only dictates circumstances establishing prima facie evidence of the intent to defraud and knowledge of insufficient funds. The term "prima facie evidence" means:

"... that degree of proof which unexplained or uncontradicted is alone sufficient to establish [intent to defraud or knowledge of insufficient funds][1] if it be credited by [a] jury."

*Patton v. State,* Okl.Cr., 312 P.2d 900, 902 (1957). We find there is no conflict between 21 O.S.1971, § 1541.1, which sets out

the element of intent that is necessary at the time the bad check is passed and 21 O.S.Supp.1975, § 1541.4, which sets up circumstances necessary for the prosecution to establish prima facie evidence.

■ Defendant next contends that the procedure of allowing a creditor to hold a check for thirty days without a complaint being filed is nothing more than a collection device, allowing private parties to impose criminal liabilities. Here defendant apparently is referring to the last sentence of § 1541.4, which section is as follows:

"The term 'false or bogus check or checks' shall include checks or orders which are not honored on account of insufficient funds of the maker to pay same, or because the check or order was drawn on a closed account or on a non-existent account when such checks or orders are given in exchange for money or property or in exchange for any benefit or thing of value, as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and the knowledge of insufficient funds in, or credit with, such bank or other depository; provided, such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with the protest fees, within five (5) days from the date the same is presented for payment; and provided, *further, that said check or order is presented for payment within thirty (30) days after same is delivered and accepted.*" [Emphasis added]

This proviso clearly applies to that time period in which the payee must place the check or order in circulation in order for the same to be the basis of a criminal charge under the above statute. This is, in effect, a limitation on the prosecution for the protection of the maker, preventing the payee from holding the check or order out of circulation for months or years, depositing

---

1. Within the cited case the quote reads, "that degree of proof which unexplained or uncontradicted is alone sufficient to establish *unlawful intent* if it be credited by [a] jury." The insertion only affects the evidence to be proven, not the definition itself.

the same, and then filing a complaint under this criminal statute. Accordingly, the failure of the payee to present the check or order to the drawee bank within thirty days does not extend the period of criminal liability, but restricts it. If the payee presents the check or order within thirty days, the longer general statute of limitations governs; on the other hand, if the payee does not present it within thirty days, the statutory prima facie evidence fails. The failure of the prima facie evidence can hardly work to the detriment of the defendant. In any case, if the payee or any other person, uses the Oklahoma "bogus check" statute as a collection device, depending on the circumstances involved, the payee or that person risks criminal liability themself. See, 21 O.S.1971, §§ 543 and 544.

■ Finally, defendant contends that §§ 1541.1, et seq. are unconstitutional in that the term "insufficient funds" is not defined anywhere in the statutes and is, therefore, "vague and invalid." We note that the term "insufficient funds" is not specifically defined, but disagree that such term is vague or invalid within the context that it appears in 21 O.S.Supp.1975, § 1541.-4, to-wit:

"The term 'false or bogus check or checks' shall include checks or orders which are not honored *on account of insufficient funds of the maker to pay same,* or because the check or order was drawn on a closed account or on a non-existent account . . . ." [Emphasis added]

We believe the phrase ". . . on account of insufficient funds of the maker to pay same . . ." is plain, clear and unambiguous. It has been held many times:

". . . [I]f the wording of a provision of a statute . . . is plain, clear and unambiguous, its evident meaning must be accepted and there is no reason or justification for the use of interpretative devices to fabricate a different meaning."

*Hines v. Winters,* Okl., 320 P.2d 1114 (1958).

The defendant herein has stated the failure to define "insufficient funds" renders

Oklahoma's bad check law unconstitutional, but he has not suggested any meaning or application for the term other than the meaning and application used in the instant prosecution. In *Synnott v. State,* Okl.Cr., 515 P.2d 1154, 1156 (1973), we applied the test:

". . . If this statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its application, it is unconstitutional. . . ."

We feel the use of the term "insufficient funds" in the context of 21 O.S.Supp.1975, § 1541.4 is plain, clear and unambiguous and further that the term itself does not render obscure, under the test in *Synnott v. State,* supra, the definition of bogus check or checks which definition is the purpose of § 1541.4.

For the foregoing reasons, we find defendant's fourth assignment of error to be without merit.

■ After a careful examination of the record, we note that the judgment and sentence filed in the original record reflects the crime of "Uttering a Forged Instrument, A.F.C.F." but the verdict of the jury and the Information recite the true crime of "Obtaining Merchandise by Bogus Check, After Former Conviction of a Felony." This is obviously a clerical error and we DIRECT THE TRIAL COURT to enter an Order Nunc Pro Tunc, reflecting the correct crime for which the defendant was charged and convicted.

In conclusion, we observe that the record is free of any error which would justify modification or reversal. The judgment and sentence appealed from is accordingly AFFIRMED.

BLISS and BRETT, JJ., concur.