Richard CLARK, Appellant,

v.

STATE of Alaska, Appellee.

STATE of Alaska, Cross-Appellant,

v.

Richard CLARK, Cross-Appellee.

Nos. 2943 and 2964.

Supreme Court of Alaska.

Feb. 24, 1978.

Richard L. Yospin, Stephen R. Cline, Asst. Public Defenders, Ketchikan, Brian Shortell, Public Defender, Anchorage, for appellant and cross-appellee.

Michael A. Thompson, Asst. Dist. Atty., Geoffrey G. Currall, Dist. Atty., Ketchikan, Avrum M. Gross, Atty. Gen., Juneau, for appellee and cross-appellant.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

MATTHEWS, Justice.

The question presented by Clark is whether a police search of his rented vehicle was invalid. The question presented by the State on cross-appeal is whether Clark's sentence was too lenient. We answer no to both questions and affirm. The necessary facts are set forth in the discussion of each question.

### THE SEARCH

Clark was personally searched by the Ketchikan police pursuant to a valid search warrant.[1] The search took place at 4:45 A.M. on a public street. Just prior to the search Clark had been walking toward his rented car with a companion, Ms. Ramirez; when he was stopped he was standing outside it at the driver's door. Clark resisted the search and attempted to flee. He was subdued and handcuffed by the three policemen present. The search of Clark revealed 75 tablets containing L.S.D. He was then arrested and placed in the back seat of a police car. The police then searched his rental car and discovered a paper bag in the glove compartment containing some 2,000 tablets of L.S.D. and some marijuana.

The trial judge ruled that the "exigent circumstances" exception to the warrant requirement justified the search. In Schraff v. State, 544 P.2d 834, 840–41 (Alaska 1975), we identified nine recognized exceptions to the rule that no search is lawful without a warrant. Two of them are relevant here:

A search, with probable cause, to avoid destruction of a known seizable item. (citation omitted)

A search of a movable vehicle. (citation omitted)

Movable vehicle search cases are based on a notion that warrantless searches must be tolerated because vehicles and evidence contained in them might be removed before it is possible to obtain a search warrant.[2] Thus, the movable vehicle exception, which we referred to in Schraff may properly be considered to be a subcategory of

---

1. The search warrant commanded the police to search Clark and his car for some 120 tablets of L.S.D. The trial court ruled that the warrant was valid as to the search of Clark's person and invalid as to the search of his car. Neither party challenges this ruling on appeal.

2. See Daygee v. State, 514 P.2d 1159, 1163 (Alaska 1973); Coolidge v. New Hampshire, 403 U.S. 443, 458, 91 S.Ct. 2022, 2033, 29 L.Ed.2d 564, 578–79 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, 426–29 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

the destructible evidence exception.[3] The trial judge, in accordance with many authorities, combined the two exceptions.[4]

In order for a warrantless search of a vehicle to fit within the destructible evidence exception, the prosecution must establish two conditions: (1) There must be probable cause to believe that the vehicle contains evidence or contraband and (2) there must be exigent circumstances justifying conduct of the search without a warrant.[5] We find, as did the trial judge, that both conditions have been satisfied.

■ Probable cause is established by the *following evidence known to the police at the time they searched the vehicle.* They had been advised by a reliable informant on the night of the search that Clark had approximately 2,000 tablets of L.S.D. which he was then trying to sell. Clark was said to have 120 tablets on his person. The balance was reported initially in the possession of his partner, a man named Cook. The police had a description of the car Clark had rented. They knew it was parked across the street from a bar where Clark and Ms. Ramirez were socializing with other people. They learned that Cook had checked out of his Ketchikan hotel room, and they did not know where he was. A few hours before the search a patrol officer had observed three people sitting in

the parked car, but he could not tell who they were. Clark resisted the search. When asked for the car keys, he said he did not have them, even though he was in the process of entering the car on the driver's side when apprehended. Ms. Ramirez said she did not have the keys either. Clark had fewer than the expected 120 tablets on his person.

We find persuasive the state's argument based on these facts:

Therefore, the police were confronted with the following situation: They have stopped and searched a suspect at his parked car . . . . The suspect and partner were apparently sharing the automobile. The suspect attempts to flee by force and the efforts of all three officers are required to subdue him. Both the suspect and the female deny having the automobile keys, leaving the partner as the only other logical possessor. The officers know that three persons had been in the car a short time previously and the suspect and female can only account for two. As the partner has relinquished his hotel room, the only known place in town within his control is the shared automobile. Both the suspect and female attempt to lessen or disguise their connections with the car both spatially and in terms of ownership or control (by not producing the keys), and also thereby

**3.** In several recent cases where a vehicle search was upheld by the U. S. Supreme Court, the search took place after the vehicle was lawfully under police control or custody. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). The searches in these cases were lawful because they were thought to be a reasonable incident to a caretaking function, because they were carried out in accordance with standard police procedures, and because of the limited expectation of privacy inhering in an automobile. *South Dakota v. Opperman, supra,* 428 U.S. at 366–369, 371–376, 96 S.Ct. at 3095–3097, 3098–3100, 49 L.Ed.2d at 1004–05, 1007–09. These cases hold that under certain circumstances a warrantless search of a vehicle is lawful after the police have initially lawfully

come to exercise control over it; they are clearly distinguishable from this case in which the validity of the initial intrusion is in question.

**4.** The trial judge's decision combined the notion that the car was movable, i. e., it could not be secured by the law enforcement personnel at the scene, with the notion that this made possible the disappearance of the evidence. This is what made up the "exigent circumstances" justifying the search. *See United States v. Canada,* 527 F.2d 1374, 1379 (9th Cir. 1975); *United States v. Patterson,* 492 F.2d 995, 996 (9th Cir. 1974), *cert. denied,* 419 U.S. 846, 95 S.Ct. 82, 42 L.Ed.2d 75 (1974); *United States v. Connolly,* 479 F.2d 930, 934 (9th Cir. 1973), *cert. denied,* 414 U.S. 897, 94 S.Ct. 248, 38 L.Ed.2d 139 (1973); *Daygee v. State, supra* note 2, at 1163; *Ellison v. State,* 383 P.2d 716, 720 (Alaska 1963).

**5.** See authorities cited in footnote 4.

prevent the officers from gaining control. The quantity of L.S.D. involved was being offered for immediate sale by persons not permanent residents (e. g., living in hotels, driving rented cars), which suggests a limited number of places it could be held. The suspect has less contraband on his person than expected, 75 vs. 120 doses, thus suggesting that quite a lot had been ingested, sold or placed elsewhere.

The second condition, the existence of exigent circumstances, is not automatically fulfilled merely because the object searched is an automobile.[6] The presence of an exigent exception to the warrant requirement must be determined under the factual circumstances of the search rather than the abstract potential for mobility or destruction of the thing searched.

In *Coolidge v. New Hampshire, supra* note 6, the Court invalidated an automobile search, emphasizing that the suspect could not reach the vehicle, the vehicle was not in a public place, the search did not involve contraband, and the suspect had no known confederates.[7] Here the vehicle was parked in a public place, the search was for contraband, and the officers had grounds for believing that a known accomplice was at large who would be motivated to move the vehicle or take any evidence it contained.[8] Under such conditions, exigent circumstances sufficient to justify a warrantless search have been shown.

Appellant contends that once the arresting officers gained control of the paper bag found in the car's glove compartment, the justification for the warrantless intrusion ceased, and the officers should have obtained a warrant before searching the bag.[9] However, there is persuasive authority holding that the same factors which justify a warrantless automobile search—probable cause and exigent circumstances—justify an on the spot search of containers found in the course of such a search.[10] If the rule were otherwise the effectiveness of the type of vehicle search here involved would be severely curtailed; it could reveal only unpackaged or unwrapped items.[11]

It may be that not every container found in a lawfully searched automobile is subject to a search as a part of the automobile search, because a higher expectation of privacy may inhere in the container than is afforded the automobile. In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the U. S. Supreme Court indicated that a locked foot locker was entitled to significantly greater Fourth Amendment protection than an automobile because of a perceived "lesser expectation of privacy in a motor vehicle." *Id.*, 433 U.S. at 10, 97 S.Ct. at 2484, 53 L.Ed.2d at 549. Although the foot locker was placed in an automobile trunk by the defendants in *Chadwick* a few seconds before they were arrested, the Government apparently conceded that such a brief contact did not make the case one involving an automobile

---

**6.** *Erickson v. State,* 507 P.2d 508, 516 (Alaska 1973); *quoting Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564, 580 (1971): "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears."

**7.** *See United States v. Connolly, supra* note 4, at 935.

**8.** The officers knew of Cook's existence, but not his precise location. The day before the search, however, he had been reported to be in Ketchikan. Further, both Clark and Ramirez denied having the car's keys. A reasonable conclusion would be that Cook, Clark's partner, might have the keys.

**9.** *Dicta* in *Daygee v. State,* 514 P.2d 1159, 1166–67 (Alaska 1973) support this contention.

**10.** *United States v. Tramunti,* 513 F.2d 1087, 1104 (2nd Cir. 1975); *United States v. Soriano,* 497 F.2d 147, 149 (5th Cir. 1974); *United States v. Evans,* 481 F.2d 990, 994 (9th Cir. 1973).

**11.** Similar considerations permit the opening of containers found on an individual who is searched incident to an arrest. *Cf. Schraff v. State,* 544 P.2d 834, 847 (Alaska 1975) and *McCoy v. State,* 491 P.2d 127, 131–138 (Alaska 1971). *Erickson v. State,* 507 P.2d 508 (Alaska 1973) is distinguishable because the issue there was not the permissible intensity of an otherwise lawful search, but whether the search itself was lawful.

search. *Id.*, 433 U.S. at 10, 97 S.Ct. at 2483, 53 L.Ed.2d at 548. The Court did not, therefore, decide the question whether opening a locked container found in a vehicle search was or was not justifiable on the same basis as the vehicle search. In a separate concurring opinion Mr. Justice Brennan spoke to, but did not answer, the question:

> While the contents of the car could have been searched pursuant to the automobile exception, it is by no means clear that the contents of locked containers found inside a car are subject to search under this exception, any more than they would be if the police found them in any other place.

*Id.*, 433 U.S. at 17, 97 S.Ct. at 2486, 53 L.Ed.2d at 552 n. 1. If we assume that *Chadwick* is the precursor of a rule holding that certain types of containers found in lawful vehicle searches may not be opened without a warrant, that rule would not apply to this case. This is so because the expectation of privacy inherent in locked luggage is incomparably higher than in the container involved here, a paper bag.

The defendant next contends that the police timed his arrest and search to give them a pretext for searching his vehicle. He contends that the "real purpose of searching and arresting appellant as he approached his car was to justify an intrusion into the car." We see no evidence supporting appellant's claim. It is true that an arrest should not be used merely as a pretext for a search.[12] Here, however, the police gave credible testimony that they delayed searching or arresting defendant while he was in the bar across from his car for fear that a fight might break out. Further, it is significant that the police had an ostensibly valid warrant to search Clark's car; thus there was no reason to arrange a pretext for the car search. Moreover, neither the personal search, nor the arrest may be characterized as being motivated by ulterior considerations. The police did have probable cause to believe defendant had L.S.D. on his person and they had a valid warrant authorizing them to search him; when they did search Clark they discovered L.S.D. on his person and arrested him.

### THE SENTENCE

Clark was convicted of possession of an hallucinogenic drug with intent to sell or distribute in violation of AS 17.12.010. One who commits this offense is punishable by imprisonment for any term of years or life, or by a fine of not more than $20,000, or both.[13]

Clark was sentenced to seven years, with execution of his sentence suspended for five years. He was placed on probation for 30 months on condition that he (1) complete school;[14] (2) be employed while not in school or incarcerated; and (3) report to the Ketchikan Correctional Institution in September 1976 to serve six months, subject to school release and credit for the 45 days he had already served. This sentence was to run concurrently with the sentence for his conviction on an earlier offense,[15] with probation in that case to be revoked by the judgment in the instant case.

Clark was 25 years old on the date of the offense. His prior convictions consisted of five motor vehicle offenses during 1973–74[16] and one conviction in 1975 for possession of marijuana with intent to sell.

Clark's probation officer stated that Clark was an excellent student, with a good attendance record and considerable motivation. However, the officer also concluded that Clark was motivated to commit the present offense by a desire to profit rather than by any social maladjustment. He also believed that Clark might commit the same crime again and that considering the type

---

**12.** *McCoy v. State, supra* note 11, at 138.

**13.** AS 17.12.110(b)(2). AS 17.12.110(b)(1) provides a lesser penalty for first offenders. Clark had been convicted once before of violating AS 17.12.010. His earlier conviction was for possession of marijuana with intent to sell.

**14.** Clark was a full-time student at the time he was sentenced.

**15.** See footnote 13, *supra.*

**16.** Clark was convicted of three minor traffic offenses and of one count each of reckless driving and operating a motor vehicle while intoxicated.

and quantity of the drug involved, Clark represented a danger to society. The probation officer's recommendation was five years imprisonment, subject to school release.

 When a sentence is appealed we may hold that it is too severe or too lenient only if we are convinced that the sentencing court was clearly mistaken. *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970); *Davenport v. State,* 568 P.2d 939, 951 (Alaska 1977). The trial court here imposed a sentence far less than the maximum sentence of life imprisonment. This court has frequently recognized that maximum sentences generally should not be imposed without some foundation for characterizing the defendant as the worst type of offender. In making this characterization, this court has looked to the defendant's prior criminal record, age, military record, employment history, drug or alcohol addiction, presentence reports, and behavior which demonstrates dangerous propensities posing a clear risk to the public. *See, e. g., State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975). Clark clearly does not fit within the worst offender category. He is young, has a history of economic self-support, has no history of alcohol or drug addiction, has no history of violent behavior and had a basically favorable presentence report.

This court has stated on numerous occasions that the sentencing goals to be considered by a judge in determining an appropriate sentence for a particular offense include not only rehabilitation of the offender, but in addition, isolation of the offender in order to protect the public, deterrence of the offender and of other members of the community who might possess similar criminal tendencies, and reaffirmation of societal norms embodying condemnation of the unlawful acts performed by the guilty person.[17] The court has also stated, however, that it will accept as a guideline the American Bar Association's recommendation that except for cases involving particularly serious offenses, dangerous offenders and professional criminals, maximum prison terms ought not exceed five years.[18]

While the sentence is lenient, it cannot be considered clearly mistaken in light of the foregoing. The state's objection is that it is possible that Clark, who is a second offender, will serve only six months for this offense subject to school release.[19]

Judge Schulz's sentence attempts to balance deterrence goals against the rehabilitative goal. It recognizes this individual's potential while at the same time providing a harsh penalty if he fails to comply with the rehabilitative program established for him.

AFFIRMED.

---

**17.** *See, e. g., Salazar v. State,* 562 P.2d 694, 696 (Alaska 1977); *Andrews v. State,* 552 P.2d 150, 152 n. 7 (Alaska 1976); *Waters v. State,* 483 P.2d 199, 202 (Alaska 1971); *State v. Chaney, supra.*

**18.** *Salazar v. State, supra* note 17; *Donlun v. State,* 527 P.2d 472, 475 (Alaska 1974).

**19.** Under the original and Amended Judgment and Commitment, Clark is to be "released between the hours of 7:30 a. m. and 4:30 p. m. to attend classes at Ketchikan Community College . . . ."