**Charles S. FINCH, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. 3242.**

Supreme Court of Alaska.

March 30, 1979.

Dick L. Madson, Fairbanks, for appellant.

W. H. Hawley, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Justice.

In the early morning hours of May 18, 1976, Charles Finch allegedly struck Barbara Butcher, a prostitute, on the head with a partially-empty bottle of Galliano. The two were in a motel room at the time of the assault. A lengthy physical struggle ensued, during which Butcher received a two-inch laceration on the back of her head and a black eye, and complained of pain in the right front of her forehead. When Butcher escaped from Finch, she ran to the front desk, told the clerk what had happened and asked her to order a cab.

Two Alaska State Troopers were at the hospital when Butcher came in for emergency treatment. She was reluctant to speak with them. One of the troopers went through the pockets of her jacket looking for identification or any indication of what had happened to her. He found Finch's business card. This card led them to the motel in which the incident occurred, where they received more information from the desk clerk.

The troopers returned to the hospital and spoke to Butcher, who described the incident, gave the officers the motel room number, and said that the man who had assaulted her said he was going to dispose of all signs of the incident. Based on the information she had given them, the troopers returned to the motel. One of the troopers stayed outside the door to the room in which the incident had occurred, while the other spoke to the desk clerk. The desk clerk could not leave the desk, so she gave the trooper the key to the room. The troopers phoned the room and received no response, knocked on the door and received no answer, observed that no light was coming from under the door, and did not hear any sounds indicating anyone's presence in the room. They opened the door and went inside. They did not have a warrant authorizing them to do so.

The troopers made observations and seized fragments of glass from the room. They testified at Finch's trial for assault with a dangerous weapon.[1] Analysis of the glass fragments and the observations of the troopers were admitted into evidence over objection. The trial court judge apparently accepted the state's argument that the warrantless search and seizure fit into an exception to the requirement of a search warrant which allows warrantless searches to be made when there is a danger of "imminent destruction of known evidence."[2] Finch was convicted on a jury verdict, and appeals.

In determining whether the warrantless intrusion into Finch's hotel room[3]

1. AS 11.15.220 provides:

    *Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment for not more than 10 years nor less than six months, or by a fine of not more than $1,000 nor less than $100, or by both.

2. We recognized this exception to the requirement for a warrant in *Erickson v. State*, 507 P.2d 508, 515 (Alaska 1973).

3. A guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures, and a hotel clerk is without au-

can be validated under the exception to the warrant requirement to prevent the imminent destruction of evidence, we have adopted a framework suggested by the Court of Appeals for the Third Circuit in *United States v. Rubin*, 474 F.2d 262 (3d Cir.), *cert. denied sub nom., Agran v. United States*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). There must be probable cause to believe that evidence is present, and the officers must reasonably conclude, from the surrounding circumstances and the information at hand, that the evidence will be destroyed or removed before a search warrant can be obtained. *Id.* at 268.

Circumstances which are relevant to the determination include: the degree of urgency involved; the amount of time necessary to secure a warrant; the possibility of danger to police officers guarding the site while a warrant is sought; information indicating that the possessors of the evidence are aware the police are on their trail; and the ready destructibility of the evidence.[4]

We applied a similar framework in *State v. Spietz*, 531 P.2d 521, 524–25 (Alaska 1975), in determining that the exigent circumstances in that case did not justify the warrantless intrusion of a house, and in *Clark v. State*, 574 P.2d 1261 (Alaska 1978), in determining if a search was justified.

In the present case, the trial judge made no specific findings pertaining to the objection. He overruled the objection to the evidence based on his own in-court examination of one of the troopers. The substance of the trooper's testimony before the judge was:

> And based on what she [Butcher] told us about the bedding being stripped, and the fact that she was told by the man that assaulted her that he was going to dispose of all of it, and that she would have nothing to show the police, we—I felt, personally, that there was a possibility that evidence was being carried away

from that location, so I felt compelled to find out.

We have concluded from the record that the troopers had probable cause to believe that evidence was in the motel room. We have also determined, however, that it was not reasonable for the officers to conclude from the surrounding circumstances and the information at hand that the evidence would be destroyed or removed before a search warrant could be obtained. The only valid course of action under the circumstances would have been to secure the room and station one officer there while the other sought a search warrant. The evidence was erroneously admitted.

Since we have concluded that error was committed which affected the constitutional rights of Finch, we must reverse the conviction unless we can say beyond a reasonable doubt that the error did not contribute to the verdict, and thus was harmless. *Richardson v. State*, 579 P.2d 1372, 1373–74 (Alaska 1978).

From a review of the record, we have determined that the evidence obtained by the troopers and the fruits of that evidence did not contribute to the verdict. That evidence included glass fragments; testimony by a chemist that those glass fragments were similar to those of a bottle of Galliano; testimony by police officers that the bathroom area was wet, and that the bed linens were missing.

Ms. Butcher testified as to the fact that she was struck on the head with a bottle and that Finch had told her he would try to remove all evidence of the incident from the room. This testimony was corroborated by the testimony of the maid that a glass object had broken in the room during the time that Finch had occupied it. The maid also testified that the bedspread and blanket were wet when she made up the room between 8:30 and 11:30 a. m. following Finch's occupancy. In addition, the night

---

thority to consent to a search of the guest's room. *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856, 861 (1964).

4. *United States v. Rubin*, 474 F.2d at 268–69 (3d Cir.), *cert. denied sub nom., Agran v. United States*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973).

auditor testified that Butcher had run to her, stated that a man had hit her in the head with a bottle, and shown her the bleeding wound.

Thus, the troopers' evidence merely corroborated Ms. Butcher's testimony. Moreover, in all material respects that testimony was further corroborated by the testimony of disinterested witnesses.

Because we have concluded that beyond a reasonable doubt the error of the trial court did not contribute to the verdict of guilty in this case, we hold that the error was harmless and the conviction should stand.[5]

AFFIRMED.

BURKE, Justice, concurring.

I agree that any error in this case was harmless beyond a reasonable doubt. In my view, however, there was no error. Thus, I would affirm the judgment of the superior court upon that ground rather than by resort to the doctrine of harmless error.

I think the police were entitled to enter Finch's motel room without a search warrant to prevent the removal or destruction of evidence. Undoubtedly, they had probable cause to believe that there was evidence of an assault in the room. Such evidence might reasonably have included blood spots or stains; the weapon used to commit the assault, or fragments thereof; fingerprints of the assailant, perhaps on the weapon itself; and other physical evidence tending to corroborate the victim's account of the incident.

Such items, in large part, were of a sort that could have been quickly removed or destroyed. For example, it would have been an easy matter to wipe all fingerprints from the weapon or to remove blood spots, or at least make those items far more difficult, if not impossible, to detect and analyze. The time necessary to obtain a search warrant certainly far exceeded that which would have been required for the removal

---

**5.** We have disregarded those portions of Finch's testimony which otherwise would further support the conclusion that the error was harmless. Finch testified that he had flung the Galliano bottle, which accidentally struck Butcher and broke. While the illegal observations and evidence of the troopers corroborated Ms. Butcher's testimony, they did not negate Finch's defense of accident. That defense was effectively refuted by the testimony of the night auditor, the troopers' observations at the hospital, and Ms. Butcher's testimony. In *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), it was held that a defendant's testimony from a prior trial in which illegal confessions had been introduced was the inadmissible fruit of the illegally-procured confessions and that the government had failed in its burden of showing that the illegally-obtained confessions did not induce the defendant's testimony. Assuming, without deciding, that Finch was induced to take the stand because of the testimony of the troopers as to the illegal search of the motel room, we have not considered his trial testimony as independent evidence of guilt for the purpose of applying the harmless error rule. *See Smith v. Estelle*, 527 F.2d 430, 433 (5th Cir. 1976).

We note, however, that without citing *Harrison*, some courts have held that a defendant's admissions corroborating illegally-introduced evidence render harmless the introduction of the illegal evidence. *Allen v. State*, 91 Nev. 78, 530 P.2d 1195 (1975) (introduction of illegal search evidence harmless beyond reasonable

doubt in light of defendant's own testimony relative to the shooting); *State v. Thurman*, 84 N.M. 5, 498 P.2d 697 (N.M.App.1972) (improper introduction of hearsay videotape of trail of blood spots held harmless where defendant on the stand admitted that he was the person shot by officers and the person who fled along the trail). *See also State v. Lenahan*, 12 Ariz.App. 446, 471 P.2d 748 (1970); *Clemons v. State,* 505 S.W.2d 582 (Tex.Cr.App.1967). Moreover, where the illegally-introduced evidence had no bearing on the offered defense, some courts have held it to be harmless error. *Scott v. People*, 179 Colo. 126, 498 P.2d 940 (1972); *State v. Walker*, 16 Wash.App. 637, 557 P.2d 1330 (1976); *Lonquest v. State*, 495 P.2d 575 (Wyo.), *cert. denied*, 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972). Also, some courts have found introduction of illegal evidence to be harmless when a defendant denies an intent or claims a mistake of fact. *Williams v. United States*, 399 F.2d 636 (9th Cir. 1968); *Bosin v. State*, 565 P.2d 1061 (Okl.Cr.App.1977); *Dunaway v. State*, 561 P.2d 103 (Okl.Cr.App.1977); *Hudson v. State*, 172 Tex.Cr.R. 565, 361 S.W.2d 388 (1962). Because we have found that the introduction of the illegal evidence was harmless, without relying on corroboration from Finch's testimony, we do not reach the issue of whether that testimony was induced by the troopers' testimony, or, if so, whether the exclusion of the defendant's testimony from the harmless error analysis would be required.

or destruction of much of this important evidence, and an officer at the door would do nothing to prevent such activity by one already in the room.

In my opinion, these considerations, together with the fact that the alleged assailant had made a specific threat to remove all evidence of the incident, provided sufficient danger of removal or destruction of evidence to justify the warrantless intrusion. The majority's contrary conclusion, that a warrant was required, is, I believe, entirely unreasonable under the circumstances. It simply ignores the realities of the situation.